Charles BALLER IV, by His Parents, Natural Guardians, and Next Friend, Charles BALLER III and Beverly Baller, and Beverly Baller and Charles Baller III, Appellants (Plaintiffs),

v.

Curtis W. CORLE; Habig Trucking and Excavating, Inc.; Northern Indiana Public Service Company; Fleming Excavating, Inc.; and City of Bluffton, Appellees (Defendants).

No. 2–384–A–78.

Court of Appeals of Indiana, Second District.

March 25, 1986.

Rehearing Denied June 3, 1986.

Charles R. Clark, Robert C. Beasley, Beasley, Gilkison, Retherford, Buckles and Clark, Muncie, Trent M. Patterson, Gallivan, Hamilton, Hamilton, Seese and Patterson, Bluffton, for appellants (plaintiffs).

William E. Borror, Thomas L. Wooding, Hunt, Suedhoff, Borror and Eilbacher, Fort Wayne, for appellees (defendants), Curtis W. Corle and Habig Trucking and Excavating, Inc.

William P. Wooden, Dale W. Eikenberry, Wooden, McLaughlin and Sterner, Indianapolis, for appellee (defendant), Northern Indiana Public Service Company.

John D. Walda, Ronald J. Ehinger, Barrett, Barrett and McNagny, Fort Wayne, for appellee (defendant), Fleming Excavating, Inc.

Arthur R. Kalleres, Scott A. Smith, Ice, Miller, Donadio and Ryan, Indianapolis, for appellee (defendant), City of Bluffton.

SULLIVAN, Judge.

Plaintiff-appellant Charles Baller IV (Chuck), a seven-year-old, along with his parents Charles Baller III (Chad) and Beverly Baller (Beverly) [hereinafter collectively referred to as the Ballers] acting in their own capacity and as the child's natural guardians and next friend, appeal from the jury verdict in favor of defendants-appellees Curtis Corle (Corle); Habig Trucking and Excavating, Inc. (Habig); the City of Bluffton (City); Northern Indiana Public Service Company (NIPSCO); and Fleming Excavating, Inc. (Fleming) [hereinafter collectively referred to as Defendants].

The Ballers filed suit as a result of severe injuries sustained by Chuck when he was hit by a truck owned by Habig and driven by Corle.

Because we reverse and remand for a new trial, we deem it appropriate to discuss only those issues which are determinative. They deal with instructions given the jury.

The facts of record which bear upon these issues and which are most favorable to the judgment reflect that the accident occurred near 324 West Wiley Avenue in Bluffton on August 25, 1977. The section of West Wiley Avenue where the accident occurred is three lanes wide; the middle and southern lanes carry traffic in opposite directions while the northern lane is normally reserved for parked cars. Wiley Av-

enue at this point passes through a residential neighborhood and is lined on both sides with sidewalks, each of which is separated from the street by a narrow, grassy strip.

Fleming undertook sewer repair work for the City several weeks prior to the accident. In order to replace existing sewer lines, Fleming excavated a five-foot-wide trench which extended for several blocks down the center of West Wiley Avenue. Fleming then replaced the old sewer line and filled the trench with sand and gravel. Fleming also sprayed this filler material with water, to promote settling, and deposited on top a layer of calcium chloride, a moisture absorbing chemical, in order to limit the production of dust. The latter procedure was necessary because the trench, in order to settle properly, could not be covered with paving material for a two-month period. Ruts which developed were routinely filled and the street was swept every week. At the time of the events in question, the filled trench created by the sewer repair work had not yet been paved.

NIPSCO workers were also engaged in repairing a residential gas line in front of 324 West Wiley Avenue at the time of the accident. In order to conduct the repairs, the workers used a backhoe to dig in the grassy strip between the street and the sidewalk. When not in use, the backhoe remained in the lane normally reserved for east-bound vehicles in front of the residence at 324 West Wiley Avenue.

During the afternoon of August 25, 1977, Corle was driving east on West Wiley Avenue as he returned to a job site after loading his triaxle truck with fill dirt. Slowing the truck to approximately fifteen miles per hour, he approached the construction work being done by NIPSCO employees and observed three children who appeared to be playing approximately forty feet from the street in the front yard of the residence at 324 West Wiley Avenue. Chuck was one of these children and was running from two older children as they chased him with earthworms. At the time in question, Chuck was seven and one-half years old and had been instructed by his parents regarding the dangers associated with crossing the street and the importance of crossing the street only at crosswalks. As he drove, Corle directed the truck into the middle lane in order to avoid the backhoe in the southern lane. As the truck drew even with the backhoe, Chuck suddenly ran from behind the backhoe and into the street. The earliest notice which Corle had of Chuck's actions was when Chuck suddenly appeared immediately in front of the truck. Corle stopped the truck within fifteen feet from the point of initial impact with Chuck. Tragically, Chuck passed under the front, left tire of the truck and came to rest under the first set of rear, dual tires. Chuck suffered great injury and, as a result, his right leg was amputated just below the hip.

I

The trial court gave two instructions to the jury which were erroneous and which occasioned such prejudice under the circumstances as to prompt reversal of the judgment.

Instruction 20 advised the jury that if the seven-year old boy violated two statutes concerning the duty of pedestrians, such conduct would create a presumption of contributory negligence on the part of the child.[1] Instruction 29 dealt with the doc-

---

1. Instruction 20 read as follows:
 "There were in full force and effect at the time of this occurrence two statutes of the State of Indiana which provided, in part, the following:
 IC 9-4-1-87(b). No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

 IC 9-4-1-88(a). Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon that roadway.
 If you find from a preponderance of the evidence that the plaintiff, Charles Baller IV, violated either of these statutes, on the occasion in question and that the violation was

trine of "alternative paths," and stated that the boy would be held to have incurred the risk of his injury if he chose a course of action which should have been apparent to be more dangerous than a safer available course.[2]

Both instructions concern the conduct required of a seven-year old boy to meet the standard of care imposed upon all persons, i.e., reasonable care under the circumstances.

In Indiana, no adverse presumption exists as to a child between seven and fourteen. To the contrary, there is commentary to the effect that a favorable presumption exists as to such child—that he is presumed incapable of negligence, although the presumption may be rebutted. *See Smith v. Diamond* (1981) 4th Dist.Ind. App., 421 N.E.2d 1172 at 1176–1177. On the other hand, it may be that no presumption, either favorable or adverse, exists with respect to a child over seven. *See Smith v. Diamond, supra* at 1177, n.5.

■ In any event, it is correct to say that a child between seven and fourteen is required to exercise due care for his own safety under the circumstances and that the care required is to be measured by that ordinarily exercised under similar circumstances by children of the same age, knowledge, judgment and experience. *Bixenman v. Hall* (1968) 251 Ind. 527, 242 N.E.2d 837; *Johnston v. Brown* (1984) 3d Dist.Ind.App., 468 N.E.2d 597; *Dibortolo v. Metropolitan School District of Washington Township* (1982) 2d Dist.Ind.App., 440 N.E.2d 506.

■ *Bixenman v. Hall, supra,* 242 N.E.2d 837, indicates clearly that in the light of the "special consideration" given to children in negligence cases, it is improper to convey an impression to the jury that violation of a statute constitutes negligence. Notwithstanding gratuitous closing dictum referring "in passing" to a "rebuttable presumption," the *Bixenman* decision stands for the proposition that the violation of a statute by a child must be considered in the light of the "special consideration" and not in the light of any presumption of negligence.[3]

Instruction 20 should not have been given to the jury. Use of the word "presumption" was, at best, ill-advised and erroneous. *State Farm Mutual Automobile In-*

---

without excuse or justification, then *such conduct would constitute a presumption of contributory negligence on the part of Charles Baller IV.* In order to overcome the presumption of contributory negligence, plaintiff *Charles Baller IV carries the burden of proving,* by a preponderance of the evidence, that in spite of the violation he exercised such care for his own safety which would ordinarily be exercised by a child of the same age, experience, intelligence and educational level. If plaintiffs fail to sustain their burden of proof in rebutting the presumption of contributory negligence, then any such statutory violation would constitute contributory negligence on the part of Charles Baller IV." (Emphasis supplied.) Record at 308.

2. Instruction 29 read as follows:
"In Indiana there is a rule of law known as the Doctrine of Alternative Paths. This Doctrine is defined as follows: If alternative paths exist that would have allowed a plaintiff such as Charles Baller IV to reach his destination (or avoid his pursuers) one of which paths contained a danger that would have been reasonably apparent to a like person of ordinary prudence and plaintiff, Charles Bal-

ler IV chose to take the path or route containing the danger rather than a safer path or route that was equally available to him, he is held, under the law to have *incurred the risk* of any injury he sustains.
Therefore, in this case if you find that there were reasonable, safer alternative paths or routes available to the plaintiff Charles Baller IV to enable him to avoid the boy that was chasing him at the time and place in question and that the path Charles Baller IV, in fact chose contained a danger so great and apparent that an ordinary person of like prudence would not have used that path or route under the circumstances then and there existing, you should find that Charles Baller IV incurred the risk of the injury and damages he sustained by using the path or route containing the danger." (Emphasis supplied.) Record at 318.

3. *Jones v. Gleim* (1984) Ind., 468 N.E.2d 205 does not support the giving of Instruction 20. The case holds merely that violation of the statutes in question constitutes prima facie evidence of negligence and that under the facts of that case, the *adult* pedestrian was guilty of contributory negligence as a matter of law.

surance Company v. Shuman (1977) 1st Dist. 175 Ind.App. 186, 370 N.E.2d 941. To state that there is a "presumption of contributory negligence" on the part of a seven-year old child was particularly inappropriate because it was used in conjunction with a requirement requiring the child to bear the burden of proving his own due care under the circumstances.

Instruction 20 was unnecessary insofar as it sets forth the standard by which the child's conduct is to be measured because in a separate instruction that standard was clearly and correctly stated. That separate instruction fully advised as to contributory negligence without the erroneous and misleading taint of terms like "presumption of contributory negligence" and the burden of proof necessary to overcome such presumption.

That same standard was set forth in yet other instructions which covered the duty of a pedestrian to make reasonable observations for oncoming traffic before crossing a street. In large measure, then, the jury was fully and fairly instructed upon the appropriate subject matter of Instruction 20 by other instructions. This fact renders the erroneous portions of the instruction even more patently prejudicial.

## II

■ The "alternative paths" instruction compounded the prejudicial nature of the "presumption of contributory negligence" instruction. It conveyed to the jury the impression that notwithstanding his age, Chuck was responsible for his own injury if he could have avoided the harassment of the older children without darting into the street. The instruction uses the phrase "incurred risk" as the effect of a choice of the more dangerous alternative. That phrase has a very particularized meaning in the law and the words are words of art which require definition if used in instructions to a jury.

■ As we held in Kroger Co. v. Haun (1978) 2d Dist., 177 Ind.App. 403, 379 N.E.2d 1004, incurrence of the risk requires actual knowledge of the impending danger. In the context of the facts before us, Chuck could have incurred the risk of his injury only if he had actual knowledge of the risk of danger and appreciated its magnitude but nevertheless accepted the risk by voluntarily engaging in the course of conduct which he followed.

As noted by Chief Judge Buchanan in his dissent, Instruction 29 contains a jury advisement with respect to the doctrine of incurred risk. He uses that fact to invoke waiver against Ballers. That an issue of incurred risk may have been properly submitted to the jury in this case is not the question before us with respect to Instruction 29. It is, rather, that the instruction misstates the doctrine of incurred risk in terms of the alternative paths doctrine.

■ The principle focus of Instruction 29 is the alternative paths doctrine. The Ballers' objection that the instruction is an incorrect statement of the law is well taken. Instruction 29 improperly permits a conclusion of incurred risk when the actor has no actual knowledge of the danger but has only acted negligently and has failed to discover a danger which "would have been reasonably apparent to a like person of ordinary prudence."

## III

Ballers tendered into evidence the deposition testimony of James Murray at the conclusion of plaintiffs' case-in-chief. The court, however, deemed the evidence premature and took the matter of its admission under advisement. The evidence was subsequently excluded upon grounds that it was not proper rebuttal evidence upon the issue of contributory negligence.

The substance of Mr. Murray's testimony as to the typical seven-year-old may not have been indispensable to the jury's assessment of the evidence. He stated in effect that seven-year-old boys are impulsive and when at play tend to block out logical or rational considerations and consequences of their conduct. This information is not so specialized as to be wholly outside the knowledge which jurors accumulate in their day-to-day activities as members of society.

■ Nevertheless, the matter of contributory negligence was very much at issue in

the case. That matter necessarily depended upon the conduct which might be reasonably expected of a seven-year-old child with similar experience, education, intelligence and judgment. The Ballers were prevented from having Murray's opinion considered as a part of their case-in-chief. They were thereafter frustrated in their attempt to have the opinion considered because in the view of the trial judge it was not proper rebuttal.

 The evidence was relevant and Mr. Murray had established sufficient credentials for the rendering of his opinion as to the objective consideration of behavior expected of a typical seven-year-old.

Although standing alone, the exclusion of Murray's deposition evidence would not result in reversal, that exclusion when coupled with the two misleading instructions concerning the conduct of seven-year-old children, dictates our decision.

It is not our prerogative to speculate with respect to the underlying rationale for the verdict. While it is possible that the jury did not consider the erroneous instructions, but rather determined that none of the defendants were negligent, we cannot reach such conclusion as a matter of law. Therefore even though from the evidence of record a reasonable trier of fact might render a defendants' verdict, a different trier of fact might reasonably conclude that one or more defendants were negligent. Accordingly, we are compelled to remand for reconsideration without the taint of the prejudicial instructions.

For the foregoing reasons, we reverse the judgment and remand for a new trial.

SHIELDS, J., concurs.

BUCHANAN, C.J., dissents with opinion.

BUCHANAN, Chief Judge, dissenting.

I must dissent. In summary, it is my opinion that the trial court's Instruction 20 should be affirmed because it is an accurate statement of the impact of a statutory violation on a child's standard of care; any error arising from the trial court's Instruction 29 on incurred risk was waived because the Ballers failed to object to Instruction 26 which dealt with the same issue of incurred risk; and, the trial court did not err in excluding the deposition of an expert witness concerning the behavior of seven-year-old children because such evidence was not beyond the common knowledge and experience of ordinary persons.

As I see it, the majority misapplies existing case law as to the effect of a violation of a safety statute on the standard of care applicable to a child. The majority interprets the leading case of *Bixenman v. Hall* (1968), 251 Ind. 527, 242 N.E.2d 837, as holding it improper to convey to the jury the impression that a violation of a safety statute by a child constitutes negligence. *Majority opinion* at 385. *Bixenman*, however, held that in rebutting the presumption of negligence created by a statutory violation consideration should be given to the standard of care required of a *child* and not of an adult.

> "Proof of [the violation of a safety regulation] by the child *will raise a rebuttable presumption of negligence* which the child must then overcome by proof that in spite of the violation, he exercised that degree of care which would ordinarily be exercised by a child of the same age, experience, intelligence and educational level."

*Bixenman, supra* at 535, 242 N.E.2d at 841 (emphasis supplied). I consider this language of our supreme court regarding the crea... ¬ of a rebuttable presumption of negligence by a child's violation of a safety statute as essential to its holding in *Bixenman*, and is not, as characterized by the majority, mere "gratuitous closing dictum."

This court has previously approved of jury instructions, like Instruction 20, that created rebuttable presumptions of negligence from a child's statutory violations. *LaNoux v. Hagar* (1974), 159 Ind.App. 646, 308 N.E.2d 873, *trans. denied*. Our supreme court approved of a similar instruction which employed mandatory language regarding a finding of negligence based on a child's statutory violation. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613. In light of the rule of *Bixenman*, and

its subsequent application in our case law, I find Instruction 20 to be a correct statement of the law on the presumption of negligence created by Chuck's statutory violations.

The majority concludes that Instruction 29 was an improper application of the doctrine of incurred risk. Specifically, the majority finds that Chuck did not have actual knowledge of the impending danger occasioned by the truck driven by Corle, and therefore an instruction on incurred risk was erroneous. Even if one assumed, arguendo, that actual knowledge on the part of Chuck was not shown, I would hold that the Ballers waived this error by their failure to object to Instruction 26.

The Ballers did not object at trial or in their motion to correct error to Instruction 26 which stated:

"Defendants contend that with regard to Charles Baller IV's claims, Charles Baller, IV is barred from recovery because he incurred the risk of his injuries. With regard to his defense, defendant has the burden of proof by preponderance of the evidence. Incurred risk is a complete bar to recovery by Charles Baller, IV. A person incurs the risk of injury when he voluntarily does an act, engages in some conduct or places himself in a position of danger and he has knowledge of and appreciates the risk attendant to his act or conduct.

If you find that Charles Baller, IV voluntarily ran across Wiley Street and that he knowingly placed himself in a position of danger when he ran into Wiley Street without looking and that he had knowledge and appreciated the risk of placing himself in this position of danger by engaging in such conduct, you shall find for the defendants."

*Record* at 315. Instruction 26 thus placed before the jury the same issue which the majority finds erroneous in Instruction 29. In this situation, the error was waived and, considering all the instructions, does not require reversal because the Ballers suf-

fered no prejudice. *See United States Fidelity & Guar. Co. v. Baugh* (1970), 146 Ind.App. 583, 257 N.E.2d 699, *trans. denied.*

Finally, the majority holds that the trial court erred in excluding the deposition of James Murray (Murray) concerning the typical behavior of seven-year-old children. Even assuming that Murray qualified as an expert on child behavior because of his nineteen years of experience in grade schools, the majority admits that the information contained in Murray's deposition was not beyond the jury's knowledge. Indiana has long recognized that expert testimony is inappropriate on matters within the common knowledge and experience of ordinary persons. *See Breese v. State* (1983), Ind.App., 449 N.E.2d 1098, *trans. denied; Rosenbalm v. Winski* (1975), 165 Ind.App. 378, 332 N.E.2d 249, *trans. denied.* The Ballers were not entitled to present Murray's expert opinion and were therefore not prejudiced by the trial court's refusal to admit his deposition.

All in all, I can find no reversible error. The judgment should be affirmed.