Jeffrey B. BROCKMEYER, by his next friends Larry D. BROCKMEYER and Carol A. Brockmeyer; Larry D. Brockmeyer and Carol A. Brockmeyer, Individually and as parents and natural guardians of Jeffrey B. Brockmeyer, Appellants–Plaintiffs,

v.

FORT WAYNE PUBLIC TRANSPORTATION CORPORATION, Appellee–Defendant.

No. 92A03–9206–CV–182.

Court of Appeals of Indiana, Third District.

May 26, 1993.

Rehearing Denied Aug. 19, 1993.

Mark D. Ulmschneider, Steele, Ulmschneider & Eberhard, Fort Wayne, for appellants-plaintiffs.

Martin T. Fletcher, Sr. and Anne Carney, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for appellee-defendant.

HOFFMAN, Judge.

Appellants-plaintiffs (collectively the Brockmeyers) appeal the trial court's entry of summary judgment in favor of appellee-defendant Fort Wayne Public Transportation Corporation (PTC).

The facts pertinent to the appeal disclose that on February 13, 1989, Jeffrey, who was 13 years old at the time, was struck by a car while he was crossing the road in front of his home on foot. Immediately prior to the incident, Jeffrey had alighted from a PTC bus. PTC provided bus service to and from the school Jeffrey attended.

The PTC bus stopped approximately across from Jeffrey's home on the opposite side of the road. The road was heavily travelled. After debarking, Jeffrey hurried behind the PTC bus. He hesitated but did not stop at the center line of the road. As he continued across the road he was struck by a car. Jeffrey, who sustained severe injuries, has no memory of the incident.

The Brockmeyers instituted this suit in February 1991. The Brockmeyers alleged' *inter alia* that PTC was negligent in the design of its route, in requiring children to cross a heavily travelled road, in using a non-yellow bus, in failing to adequately train drivers, and in failing to take the steps necessary to provide for the safety of the children. On September 23, 1991, PTC filed its motion for summary judgment.

In opposition to the summary judgment, the Brockmeyers filed affidavits and depositions which according to the Brockmeyers raised genuine issues of material fact. A hearing on summary judgment was held in December 1991. On March 11, 1992, the trial court entered judgment for PTC. Although this Court is not bound by the lower court's findings and conclusions when made in a summary judgment proceeding, the court concluded:

"1. The designated evidentiary matter shows that there is no genuine issue as to any material fact concerning the PTC's contributory negligence defense.

2. The PTC is a governmental entity, as defined at Ind.Code §§ 36–9–4–12; 34–4–16.5–2(c) and (f)(5).

3. The PTC may properly apply the defense of contributory negligence in Plaintiffs' action against the PTC.

4. Assuming normal intelligence and development, a teenager of thirteen years and four months can be contributorily negligent.

5. Jeffrey, given his age, experience, intelligence and physical abilities was contributorily negligent when he was struck by a car on a road of which he was well-acquainted and about which his parents repeatedly cautioned him and instructed him on the proper way to cross, when he failed to allow the traffic on the road to clear before proceeding to cross it; darted out from behind a bus from which he had debarked; and ran into the path of the clearly visible oncoming car."

This appeal ensued.

One issue is dispositive of the appeal: whether the trial court erred in determining that Jeffrey was contributorily negligent as a matter of law and that any alleged contributory negligence was the proximate cause of the injury.

As of the January 1, 1991 amendment to Ind. Trial Rule 56, the parties to a summary judgment proceeding must expressly designate to the trial court evidentiary matter which supports their respective positions. Ind. Trial Rule 56(C) provides:

"At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto...."

Summary judgment is appropriate if the designated evidentiary matter [1] shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, this Court stands in the shoes of the trial court. This Court must liberally construe all designated evidentiary matter in favor of the non-moving party and resolve any doubt against the moving party. *State Bd. of Tax Com'rs v. New Energy Co.* (1992), Ind.App., 585 N.E.2d 38, 39. Even if it appears that the non-moving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. The existence of a genuine issue of material fact shall not be ground for

**1.** The Brockmeyers contend that several depositions designated as evidentiary matter by PTC cannot be considered because the record does not reflect a specific order publishing the depositions. Ind. Trial Rule 5(D)(5) provides: "[t]he filing of any deposition shall constitute publication." The depositions were filed with the clerk of the court on the same day that PTC filed its motion for summary judgment. However, contrary to the rules, PTC "designated" certain depositions without reference to the portions of the depositions it considered pertinent. Our resolution of the matter does not require reversal of the cause on this basis.

reversal on appeal unless such fact was designated to the trial court and is included in the record.

> See *Block v. Lake Mortg. Co., Inc.* (1992), Ind.App., 601 N.E.2d 449, 451 n. 1.;
>
> T.R. 56(H).

Generally issues such as negligence, contributory negligence, causation and reasonable care are not appropriate for summary judgment. *See Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207, 1210–1211, 84 A.L.R.4th 97. When the facts are subject to more than one inference, contributory negligence is most appropriately a matter for the jury. *See Maldonado by Maldonado v. Gill* (1987), Ind. App., 502 N.E.2d 1371, 1373. Only where the facts are undisputed may the question of negligence become one of law. *Id.*

In *Maldonado, supra,* and *Baller by Baller v. Corle* (1986), Ind.App., 490 N.E.2d 382, 385, Buchanan, J., dissenting, this Court considered the contributory negligence of children who arguably violated statutes prohibiting one from crossing in the middle of the street and not yielding the right of way to oncoming vehicles. It was concluded that in light of the "special consideration" given to children, violation of the statutes alone would not require a presumption of negligence.

Indiana appears to follow the rule that children under the age of seven cannot be guilty of contributory negligence, that those between the ages of seven and fourteen are rebuttably presumed incapable of negligence, and those over fourteen are generally held to the same standard of care as an adult.

> *Smith v. Diamond* (1981), Ind.App., 421 N.E.2d 1172, 1176, 32 A.L.R.4th 43;
>
> see also *Maldonado, supra,* 502 N.E.2d at 1373, and
>
> *Baller, supra,* 490 N.E.2d at 385.

Regardless of the presumption, "[i]t is correct to say that a child between seven and fourteen is required to exercise due care for his own safety under the circumstances and that the care required is to be measured by that ordinarily exercised under similar circumstances by children of the same age, knowledge, judgment and experience." *Baller, supra,* 490 N.E.2d at 385.

In *Smith, supra,* 421 N.E.2d 1172, the plaintiff was a child of the age of 12 years and 9 months. He testified that he looked in one direction while crossing the street on an errand. He waited for one car to pass. He then crossed the road without looking in the other direction. This Court concluded that under the circumstances, the plaintiff was contributorily negligent as a matter of law. *Id.,* 421 N.E.2d at 1180. In reversing a judgment on the evidence rendered in favor of the defendant, this Court in *Maldonado, supra,* 502 N.E.2d at 1372–1373, specifically noted that the plaintiff in *Smith* virtually admitted his negligence by failing to look in one direction before crossing the road. In contrast, there was no such admission in *Maldonado. Id.,* 502 N.E.2d at 1373.

In the present case, Jeffrey does not recall the incident. The evidence discloses that Jeffrey paused at the center line of the road before he proceeded across. Considering the standard to which Jeffrey is held and the lack of evidence that he failed to look in either direction before proceeding, the trial court erred in concluding that Jeffrey was contributorily negligent as a matter of law.

Further, the deposition of the PTC bus driver, the deposition of PTC's general manager, and the affidavit of the Brockmeyers' expert witness contain facts which preclude summary judgment. The bus driver stated that the route could have been driven to allow Jeffrey same-side access to the bus and his home. The general manager of PTC stated that the route was planned by an employee who, to his knowledge, had no special training in school route planning; that PTC had discontinued using yellow school buses equipped with safety signals requiring traffic to stop because PTC could more economically maintain and utilize the same buses used for general public transportation; that yellow school buses and same-side service provide added safety precautions for children; and that when the bus driver believed that she

had adequate time, she drove an alternative route which allowed Jeffrey same-side drop off.

The Brockmeyers' expert witness, the Director of the Division of School Traffic Safety for Indiana Department of Education, reviewed depositions, exhibits, photographs, the contracts for transportation between the school and PTC, maps of the route area, and then drove the entire route before forming his opinions. He stated that Jeffrey's stop was the most critical on the entire route presenting the "highest risk for potential injury or death" due to the location of the residence in a "high traffic volume business-area." Accordingly, the paramount consideration was to provide Jeffrey with same-side service. In the opinion of the expert witness, the route "did not meet the standard of care required for transporting school children home from school in that there was no appropriate reason for not providing [Jeffrey] with same-side" service.

The expert witness identified other problems including:

"14. Your affiant is also of the opinion that once the bus driver, Katie Manning, requested that the route be changed to provide Jeffrey B. Brockmeyer with same-side drop off, it was inappropriate for [PTC] to deviate from that route in order to transport city workers from their downtown work area to a parking lot in a shuttle-type of operation. It is a fundamental principle of school bus route design that you do not hurry your route or change your route because you have another run to make....

＊     ＊     ＊     ＊     ＊     ＊

16. In addition to the previous breaches of the standard of care imposed upon a pupil transportation organization, your affiant is also of the opinion that the manner in which [PTC] directed its driver to unload passengers and the method in which the pupils were instructed to cross the street after having been unloaded do not meet the standard of care imposed upon prudent pupil transportation organizations.

17. According to the testimony of Katie Manning, [Jeffrey] was instructed not to cross the street until after the bus left. Bus drivers in these circumstances should have kept the bus stopped and directed the student to cross in front of it. By doing this, the bus driver utilizes the bus to create gaps or openings in the traffic and thus assists the student in the task of crossing the road; otherwise, the bus becomes a visual obstacle. With the bus stopped and the student crossing in front of the bus, the driver has more control over when it is safe to cross, the student should be directed to make eye contact with the driver, and not cross until the driver establishes that it is safe to do so by observing traffic in front of her, from her high perspective in the bus and from viewing the traffic behind her from the remote mirrors. It would be even more preferable, given the circumstances on the roadway immediately in front of the [Brockmeyer] residence, that Katie Manning actually get out of the bus and cross the street with the youngster. This would be even more important with a city bus that did not have the yellow school bus markings or other safety devices.

18. According to Katie Manning's deposition testimony, she merely waited until [Jeffrey] got off the bus and she pulled away, which conduct does not meet the standard of care of a prudent pupil transportation organization.

19. The 'modified route' that Katie Manning deviated from on February 13, 1989, would have called for the [PTC] bus to retrace its path back down Getz Road after having dropped a pupil off on Sutton Avenue. The length of time that it would take after having dropped the last pupil off to come back past [Jeffrey's] house to provide same-side drop off is between two and three minutes based upon [affiant's] observations on October 9, 1991.

＊     ＊     ＊     ＊     ＊     ＊

24. That in 1989 when this incident occurred, while the law did not prohibit the transportation of school children in vehi-

cles other than yellow school buses, it is your affiant's opinion that a prudent pupil transportation organization would not use any bus other than an appropriately marked yellow school bus. In 1989, your affiant is unaware of any pupil transportation organization located anywhere in the state of Indiana other than [PTC] who did not use yellow school buses. The yellow school bus has been in operation since 1939, it is painted 'national school bus yellow', it is easily recognized, it has a safety designed built-in lighting system, warning light system, and stop arm, and it is a [misdemeanor] in Indiana when another motorist runs that stop arm. In addition, the state and the schools throughout the state run an awareness program, there is a National School Bus Safety Week that runs from October 20 through October 26, and messages are sent out through the different news media creating awareness on the part of drivers about the need to watch and observe because of the presence of children...."

The expert witness concluded that had PTC provided same-side service, or provided special assistance to Jeffrey while he crossed the road, or provided transportation in properly marked yellow school buses, the injury would not have occurred.

In *School City of Gary v. Claudio* (1980), Ind.App., 413 N.E.2d 628, this Court noted that there exists a "well recognized duty in tort law that persons entrusted with children, or others whose characteristics make it likely that they may do somewhat unreasonable things, have a special responsibility recognized by the common law to supervise their charges."

*Id.* at 632;

see also Annot., *Contributory Negligence of Children* (1984), 32 A.L.R.4th 56, § 13[b].

In affirming the jury's award in favor of the ten-year-old plaintiff who was struck by a bus while waiting to embark, this Court reiterated that the issue of proximate cause is a question of fact for the jury if different minds might reasonably draw different inferences from the facts.

*Id.* In the decision, this Court noted that the evidence conflicted as to the circumstances surrounding the incident and that "the evidence was conflicting as to whether the children had been given any instructions or warnings by the school regarding [bus] procedures." *Id.* at 633. This Court determined that the jury's determination that plaintiff was not contributorily negligent was not erroneous as a matter of law. *Id.*

Accordingly, the facts in the present case would preclude a decision as a matter of law that Jeffrey was contributorily negligent or that any negligence on the part of PTC was not the proximate cause of the injury to Jeffrey.

Reversed and remanded.

BARTEAU, J., concurs.

GARRARD, J., concurs with opinion.

GARRARD, Judge, concurring.

I concur with the majority but wish to add a word of explanation why the plaintiff was not guilty of contributory negligence as a matter of law. As a thirteen year old, Brockmeyer was charged with the duty of using the ordinary care of children of the same age, knowledge and experience. The conduct necessary to discharge that burden is more fact sensitive than the familiar reasonable man test. It is therefore significantly less appropriate to being decided as a question of law. *See Rouch v. Bisig* (1970) 147 Ind.App. 142, 258 N.E.2d 883.