**David MAYNARD b/n/f Douglas MAYNARD and Douglas Maynard, Individually, Plaintiffs,**

**v.**

**INDIANA HARBOR BELT RAILROAD COMPANY, Defendant.**

**No. 2:96–CV–536–RL.**

United States District Court, N.D. Indiana, Hammond Division.

March 5, 1998.

Wanda E. Jones, Cappas and Jones, Highland, IN, for Plaintiffs.

Harold Abrahamson, Abrahamson, Reed and Adley, Hammond, IN, for Defendant.

### ORDER

LOZANO, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on October 31, 1997. For the reasons set forth below, the motion is **GRANTED IN PART and DENIED IN PART.**

*BACKGROUND*

Between 5:30 and 5:45 p.m. on May 23, 1994, 13-year-old David Maynard ("David") injured himself climbing between railroad cars owned by Indiana Harbor Belt Railroad Company ("IHB"). David was biking home from Hermits Park in Hammond when he decided to take a new route because a train was blocking his usual route home. The new route took him to Gibson Yard, property owned by IHB. At that point, a long train was on the tracks. David decided against taking a nearby overpass that was in view because he had never gone that way before. David waited for the train to move for approximately five minutes, but became impatient. He decided to cross through the train between the railcars.

David placed his mountain bicycle on his shoulder and climbed onto the coupling between two of the railcars. He did not observe any railroad employees before or while he began crossing through the train. David stepped on the arm of the coupling that slides in between the coupling and the car itself with his left foot. He heard banging and loud booms, and the train started moving. The arm upon which he stood slid into the coupling, smashing his left foot. David's foot became stuck, so he threw the bicycle forward and called for help. The train again moved, releasing David's foot. He jumped off the train, landing on his right foot. As a result of the accident, David's big toe was amputated and underwent skin grafts.

The IHB train upon which David alleges to have injured himself was involved in a normal switching operation at the west end of Gibson Yard, which has twelve tracks. A switching operation is moving a train engine and any attached railcars back and forth, switching tracks between movements to pick up different cars from the various tracks. Before each switching movement, Engineer Buford Painter allegedly rang the bell from the locomotive engine which powered the movements.

On September 27, 1996, Plaintiffs filed a negligence action against IHB in the Indiana state court, claiming personal injury, loss of consortium, companionship, and services. IHB removed the case to this Court based on diversity of citizenship under 28 U.S.C. section 1332.

*DISCUSSION*

The standards generally governing summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must read all facts in the light most favorable to the nonmovant. *Anderson,* 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 583 (7th Cir.1994).

The burden is on the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, which it believes demonstrate an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson,* 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988); *see also Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1391 (7th Cir.1993). Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be " 'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

*Count I*

Plaintiffs allege that IHB's negligence caused David's injury. Plaintiffs must prove three things to succeed on a negligence claim: (1) IHB owed a duty to David; (2) IHB breached that duty; and (3) IHB's breach was the proximate cause of David's injuries. *Perry v. Norfolk & Western Ry. Co.,* 865 F.Supp. 1292, 1297 (N.D.Ind.1994). The question of whether a duty is owed to a plaintiff is a question of law for the courts. *Id.; Jump v. Bank of Versailles,* 586 N.E.2d 873, 875 (Ind.Ct.App.1992).

Because David was injured while on IHB property, the Court must analyze Indiana's premises liability law to determine IHB's duty to David. *Perry,* 865 F.Supp. at 1297. A landowner's duty to one entertaining the landowner's property depends upon the entrant's status. *Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind.1991). An entrant could be a trespasser, a licensee, and an invitee. *Id.* A trespasser enters the premises for his or her own convenience, curiosity, or entertainment without the landowner's permission. *Id.* at 640. "The general rule as regards the owner or occupant of premises is that no duty is owed to a trespasser thereon except to refrain from willfully or intentionally injuring him after discovery of his presence." *Chicago, South Shore & South Bend Ry. Co. v. Sagala,* 140 Ind.App. 650, 221 N.E.2d 371, 374 (1966); *Cleveland C., C. & St. L. Ry. Co. v. Means,* 59 Ind.App. 383, 104 N.E. 785, 788 (1914); *see also Burrell,* 569 N.E.2d at 639.

A railroad company does not have a duty to anticipate a trespasser and may as-

sume that there are no trespassers on its property. *Freitag v. Chicago Junction Ry.,* 46 Ind.App. 491, 89 N.E. 501 (1909). Moreover, "a railroad company owes no duty to children living in the vicinity of its switchyards to erect fences or other barriers to prevent their trespassing . . . Nor is it obligated to have a watchman to keep children off its right-of-way and cars . . . Signs are not required. The tracks themselves are a danger warning." *Perry,* 865 F.Supp. at 1297 (quoting *Ind. Harbor Belt Co. v. Jones,* 220 Ind. 139, 41 N.E.2d 361, 363 (1942)).

 David climbed between the cars for his own convenience, i.e., to cross the tracks without waiting for the train to pass. Therefore, David was a trespasser, and if he was an adult, IHB would owe him no duty except to refrain from willfully or intentionally injuring him after discovering his presence. Plaintiffs claim only negligence, and provide no evidence of intent to harm David. Thus, the claim would be dismissed. However, David was thirteen years and seven months old at the time of the accident, and as such, he may fall under the *Means* exception to Indiana's general rule.

> [W]here the person on the track is a child non sui juris of whose presence the railroad company has knowledge, actual or constructive, . . . the company must operate its cars on such tracks with reference to the probable presence of such child and use some care to avoid injuring it; otherwise no additional care is imposed on the company over that which it owes the adult trespasser on its tracks.

*Means,* 104 N.E. at 792; *Perry,* 865 F.Supp. at 1300–01; *Sagala,* 221 N.E.2d at 375. According to Black's Law Dictionary, *non sui juris* means "lacking legal capacity to act for oneself as in the case of a minor or mentally incompetent person." BLACK'S LAW DICTIONARY 1058 (6th ed.1990). "Where a child is sui juris, it is held to be capable of exercising some care and discretion, but it is not neces-

sarily held to the same degree of care required of a person of mature years." *Cole v. Searfoss,* 49 Ind.App. 334, 97 N.E. 345, 348 (1912).[1]

 Unfortunately, whether Indiana has a presumption as to a child's capacity to exercise care and discretion is unclear. In the event that there is such a presumption, the Court would be obligated to follow it pursuant to Federal Rule of Evidence 302, "Applicability of State Law in Civil Actions and Proceedings." Plaintiffs argue that children between the ages of seven and fourteen are presumed to be *non sui juris,* or incapable of exercising some care and discretion. IHB argues that these children are presumed to be *sui juris,* or capable of exercising some care and discretion. No Indiana supreme court case is directly on point regarding this issue. "If the forum state's highest court has not ruled on a particular issue, decisions of the intermediate appellate courts of that state constitute the next best indicia of what state law is and normally should be followed by a federal court sitting in that state." 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4507, p. 151 (citing *Rekhi v. Wildwood Indus., Inc.,* 61 F.3d 1313, 1319 (7th Cir.1995)). A federal court must determine state law as it believes the state court would. *Id.* at 157; *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "Thus, intermediate appellate court decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the forum state would decide the matter in a different fashion." 19 Wright & Miller, § 4507, pp. 157–58; *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.,* 972 F.2d 805, 814 (7th Cir.1992) ("Even when a state's intermediate appellate courts are uniform . . . we are not bound by them. But we do need, in such a case, a reason for predicting that the state's supreme court will reject the intermediate

---

1. The parties discuss at length cases involving possible contributory negligence on the part of children. To be found contributorily negligent, a child must be *sui juris* and must have exercised the appropriate standard of care in the situation. *See* 21 INDIANA LAW ENCYCLOPEDIA § 102 (children deemed "incapable of exercising judgment or discretion cannot be guilty of contributory negligence, since they are *non sui juris* and incapable of exercising care"); *Echevarria v. U.S. Steel Corp.,* 392 F.2d 885 (1968). These cases are relevant here only for their insight into determining whether a child is *sui juris.*

decisions."). If there are no holdings from any state courts, or another federal court, the court must look for other *indicia* of state law. 19 Wright & Miller, § 4507, p. 165. "Mere obiter may be entitled to little weight; however, a carefully considered statement by the state court, even though technically dictum, certainly is persuasive evidence of how the state court might decide the point...." *Id.* at 166. Thus, the Court looks to Indiana courts to determine the status of the presumption.

■■ Plaintiffs cite *Bottorff v. So. Constr. Co.*, 184 Ind. 221, 110 N.E. 977 (1916) to support their position that a child between the ages of seven and fourteen is presumed incapable of exercising discretion and care. The *Bottorff* court found that a 14–year–old boy may be presumed to be responsible for his acts as an "intervening agency" when another child was injured by the defendant. *Id.* In dicta, the court noted that "[a]n infant between [the ages of seven and fourteen] is presumed to be incapable of committing crimes, but the presumption may be rebutted by proof that the infant possessed sufficient discretion to be aware of the nature of the act.... It seems that the greater weight of authority is to the effect that the same rule applies in negligence cases." *Id.* at 978.

IHB responds that Indiana law presumes that children between the ages of seven and fourteen are capable of exercising discretion and care. In *Smith v. Diamond*, a 12–year–old child was struck by a car after he looked to the left and saw a car, waited for it to pass, and then proceeded to cross the street without looking to his right. 421 N.E.2d 1172, 1174 (Ind.Ct.App.1981). The court found that the child was contributorily negligent as a matter of law because he admitted that he did not look in the direction of the on-coming car before crossing. *Id.* at 1179. According to the *Smith* court, Indiana law seems consistent with the following Illinois rule: children under the age of seven cannot be guilty of negligence, those between the ages of seven and fourteen are rebuttably presumed incapable of negligence, and those over fourteen are generally held to the same standard of care as an adult. *Id.* at 1176. However, the *Smith* court noted that "no cases have been found in which the [Indiana] courts use presumptions in favor of a child between the ages of seven and fourteen." *Id.* at 1177. In support, the *Smith* court quoted a comment to Indiana's Pattern Jury Instructions:

[d]espite the dicta in the *Bottorff* case ... to the effect that there is a presumption that an infant between the ages of seven and fourteen is incapable of negligent conduct, no Indiana civil cases have been found that have applied the presumption.

*Id.* at 1177 n. 5 (quoting "Comment to Indiana Pattern Jury Instructions (Civil)" 5.25 at 18 (1966)); *see, e.g., Bixenman v. Hall*, 251 Ind. 527, 242 N.E.2d 837 (1968). This Court notes that other comments to the same jury instruction support both a presumption in favor of the child, and a presumption against the child. "Comment to Indiana Pattern Jury Instructions (Civil)" 5.25 at 62 (1994) (citing *Bottorff* for the proposition that between the ages of seven and fourteen are presumed incapable of negligence). While the *Smith* court questioned *Bottorff*, it did not definitively rule on the issue of the presumption, and decided the contributory negligence issue based on the child's standard of care.

*Smith* has been cited by Indiana's intermediate courts for different propositions. In *Bailey v. Martz*, a boy riding a motorbike was struck and killed by a moving train. 488 N.E.2d 716, 721 (Ind.Ct.App.1986). Relying entirely upon *Smith*, the 4th District of the Indiana Court of Appeals made the conclusory statement that for children between the ages of seven and fourteen, "a rebuttable presumption exists that they may be guilty [of negligence]." *Id.;* "Comment to Indiana Pattern Jury Instructions (Civil)" 5.25 at 62 (1994). Without further analyzing the presumption, the court found the boy to be "a normal, healthy boy of 13 who must be deemed to know the perils of approaching a railroad crossing with which he was familiar at such an excessive rate of speed as to make it impossible for him to stop his motorbike before entering the crossing." *Id.* The *Bailey* court then found that the child had not exercised the proper standard of care, and thus was contributorily negligent.

In contrast to *Bailey,* the 2nd District of the Indiana Court of Appeals stated:

> *In Indiana, no adverse presumption exists as to a child between seven and fourteen.* To the contrary, there is commentary to the effect that a favorable presumption exists as to such a child—that he is presumed incapable of negligence, although the presumption may be rebutted [citing *Smith,* 421 N.E.2d at 1167–77]. On the other hand, it may be that no presumption, either favorable or adverse, exists with respect to a child over seven [citing *Smith,* 421 N.E.2d at 1177 n. 5].

*Baller by Baller v. Corle,* 490 N.E.2d 382, 385 (Ind.Ct.App.1986) (emphasis added). This excerpt is also quoted in a comment to Indiana's Civil Jury Instruction 5.25. "Comment to Indiana Pattern Jury Instructions (Civil)" 5.25 at 63 (1994).

The 3rd District of the Indiana Court of Appeals cited *Smith* and *Baller by Baller* for the proposition that children "between the ages of seven and fourteen are rebuttably presumed incapable of negligence." *Brockmeyer v. Ft. Wayne Pub. Transp.,* 614 N.E.2d 605, 607 (Ind.Ct.App.1993). However, like *Smith, Baller by Baller* and *Brockmeyer* avoided ruling on the presumption and decided the contributory negligence issue based on the child's standard of care. *Smith,* 421 N.E.2d at 1179; *Baller by Baller,* 490 N.E.2d at 385; *Brockmeyer,* 614 N.E.2d at 607.

Because Indiana's appellate courts conflict on this issue, the Court turns to the laws of other states for guidance. Several states followed the *Bottorff* dicta, that is, that the rebuttable presumption is in favor of children between the ages of seven and fourteen. 3 Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, THE LAW OF TORTS, § 1608 n. 19 (2d ed.1986). Those states include Alabama, *Superskate, Inc. v. Nolen,* 641 So.2d 231, 236 (Ala.1994) ("A child between the ages of 7 and 14 is prima facie deemed incapable of contributory negligence"); Illinois, *Strasma v. Lemke,* 111 Ill.App.2d 377, 250 N.E.2d 305, 308 (1969) ("there is a [rebuttable] presumption that a child between the ages of 7 and 14 is incapable of negligence") Mississippi, *Steele v. Holiday Inns,*

*Inc.,* 626 So.2d 593, 598 (Miss.1993); North Carolina, *Hoots v. Beeson,* 272 N.C. 644, 159 S.E.2d 16, 20 (1968) Ohio, *Howland v. Sears Roebuck & Co.,* 30 Ohio Misc. 7, 438 F.2d 725, 730 (6th Cir.1971) (reviewing conflicting Ohio cases, and finding that a child "between seven and fourteen" may be entitled to a charge that there is a rebuttable presumption against his capacity to commit negligence); Pennsylvania, *Masters v. Alexander,* 424 Pa. 65, 225 A.2d 905, 909 (1967) (per Musmanno, J., with five justices concurring); Tennessee, *Hadley v. Morris,* 35 Tenn.App. 534, 249 S.W.2d 295, 298–99 (1952); Utah, *Kilpack v. Wignall,* 604 P.2d 462 (Utah 1979) ("Between the ages of seven and fourteen, in the absence of showing to the contrary, an infant is generally assumed not to have the same consciousness of danger and the same judgment in avoiding it as an adult"); Virginia, *Grant v. Mays,* 204 Va. 41, 129 S.E.2d 10 (1963); and West Virginia, *French v. Sinkford,* 132 W.Va. 66, 54 S.E.2d 38, 39 (1948) ("An infant, 14 years of age or over, is presumed to possess sufficient mental capacity to comprehend and avoid danger; and, if he relies on his want of such capacity, the burden of proving is on him, but, if under the age of 14, he is presumed not to possess such capacity"). Two states, Kentucky and South Carolina, had abandoned the presumption in favor of the child. *Williamson v. Garland,* 402 S.W.2d 80, 82 (Ky.1966) ("We believe there is no longer any useful purpose in the rebuttable presumption against capacity for contributory negligence as to children within the seven to fourteen age group"); *Standard v. Shine,* 278 S.C. 337, 295 S.E.2d 786 (1982) (overruling cases that established presumptions of capability based on age). Importantly, the Court was unable to find any other state that has a rebuttable presumption adverse to children between the ages of seven and fourteen. *See* 3 Harper, James & Fleming, § 16.8 n. 19.

Based on the above analysis of Indiana law and the law of other states, the Court believes that the Indiana Supreme Court would not find that children between the ages of seven and fourteen are rebuttably presumed to be capable of exercising some discretion and care. The Court believes that the

Indiana Supreme Court would correct *Bailey v. Martz*, the only Indiana appellate case with which this decision conflicts. *Bailey* relied solely on *Smith* when it rebuttably presumed that children between the ages of seven and fourteen may be capable of exercising discretion and care, without any further analysis. *Bailey*, 488 N.E.2d at 721. *Bailey* incorrectly cited *Smith*. As explained above, *Smith* never ruled on the presumption issue. Rather, in dicta *Smith* merely questioned whether children between the ages of seven and fourteen are presumed incapable of exercising discretion and care. *Smith* never stated that children in this age group may be presumed capable of exercising discretion and care. 421 N.E.2d at 1177. *Smith* may stand for the proposition that Indiana has no presumption at all, making Indiana law much like the laws of the majority of other states. Moreover, no other state presumes that children between the ages of seven and fourteen are capable of discretion and care. The Court finds it hard to believe that the Indiana Supreme Court would chose to be unique in this respect, especially considering its dicta in *Bottorff* favoring this age group. Thus, the Court finds that the Indiana Supreme Court would not rebuttably presume that children between the ages of seven and fourteen are capable of exercising discretion and care.

This Court is less certain as to whether the Indiana Supreme Court would rebuttably presume that children between the ages of seven and fourteen are incapable of exercising discretion and care, or would reject any presumption. In *Bixenman v. Hall*, the Indiana Supreme Court found that proof of a safety statute violation by a 13–year–old child raised "a rebuttable presumption of negligence which the child must then overcome by proof that in spite of the violation, he exercised that degree of care which would ordinarily be exercised by a child of the same age, experience, intelligence and educational level." 251 Ind. 527, 242 N.E.2d 837, 841 (1968). As a comment to Indiana's civil jury instructions later noted, the *Bixenman* court did not presume that the child was incapable of exercising discretion and care because of his age. *Id.;* Comment to Indiana Pattern Jury Instructions (Civil) 5.25 at 63 (1994).

In *Kurowsky v. Deutsch*, the Indiana Supreme Court mentioned the presumption, but pushed the issue aside to focus on the appropriate standard of care for a 9–year–old child. 533 N.E.2d 1210, 1213–14 (Ind.1989). Here, the child appealed a verdict that found him contributorily negligent because he had violated a safety statute. The child argued that a jury instruction given on his required standard of care was "an erroneous statement of the law, because it saddles [the child] with a presumption of negligence and robs him of a presumption that he cannot be negligent." *Id.* at 1213 (citing *Bottorff*, 184 Ind. 221, 110 N.E. 977 and *Baller by Baller*, 490 N.E.2d 382).[2] The Indiana Supreme Court disagreed:

> The statements of general law in the *Bottorff* case meaning that children between the ages of seven and fourteen years are presumed, subject to rebuttal, to be incapable of committing acts of negligence, are not made as expressions in jury instructions, nor in the context of an alleged violation of a statutory duty by a child. Furthermore, such statements must be deemed to be restrained by the more recent and specific statements regarding burdens of proof and coming forward with evidence in *Bixenman*.

*Id.* at 1213–14. The *Kurowsky* court went on to decide that the jury instruction presented the appropriate standard of care for the child.

Though the Indiana Supreme Court has mentioned the *Bottorff* dicta in this recent case, it limited the dicta. *See id.* Also, the court did not apply the *Bottorff* dicta in a case where it would likely be applicable. *See Bixenman*, 251 Ind. 527, 242 N.E.2d 837. This Court is unable to determine whether the Indiana Supreme Court would not pre-

---

**2.** The *Kurowsky* court also discussed *Baller by Baller*. *Kurowsky*, 533 N.E.2d at 1214 (analyzing *Baller by Baller*, 490 N.E.2d 382). As previously stated, *Baller by Baller* mentioned that the status of the presumption was unclear in Indiana; either the presumption favored children between the ages of 7 and 14, or there was no presumption at all. 490 N.E.2d at 385. *Kurowsky* ignored this dicta. *See Kurowsky*, 533 N.E.2d at 1214.

sume children between the ages of seven and fourteen are incapable of exercising discretion and care. However, even if the Indiana Supreme Court found that there was no presumption, this Court would not grant IHB's motion for summary judgment.

■ The question of a particular child's ability to appreciate the danger is usually a question of fact for the jury. *Drew v. Lett*, 95 Ind.App. 89, 182 N.E. 547, 549 (1932) However, "[m]inors under the age of fourteen have been held to be *sui juris*, as a matter of law, based on their ability to comprehend the danger which resulted in injury." *Perry*, 865 F.Supp. at 1298 (discussing *Sagala*, 221 N.E.2d at 373, and *Dull v. Cleveland, C., C. & St. L. Ry. Co.*, 21 Ind.App. 571, 52 N.E. 1013, 1020 (1899)). *See also Dickerson v. Ewin*, 105 Ind.App. 694, 17 N.E.2d 496, 498 (1938) (en banc) (finding that "[t]here is no eviednce [sic] in the record which shows that [the 12–year–old child] was *non sui juris* insofar as his ability to appreciate the danger of riding the trains was concerned.... [The child], insofar as the evidence shows, was clearly *sui juris* ").

In *Perry*, a 15–year–old boy injured while jumping from a moving train was found *sui juris* as a matter of law. *Id.* at 1298. The court explained that even if he was under the age of fourteen, the boy would still be *sui juris* as a matter of law because he demonstrated that he was "capable of recognizing danger and exercising care for his safety." *Id.* As evidence of this, the court highlighted the boy's testimony that he understood the dangers of climbing onto and jumping from moving trains. *Id.* at 1298–99. The court noted that "plaintiffs have submitted no evidence that suggests that [he] was not capable of recognizing the danger of climbing aboard the train." *Id.* at 1299 n. 1. The boy was capable of recognizing danger and exercising care for his safety, "and the fact that he may not have exercised such care does not change the conclusion that [the boy] was *sui juris* as a matter of law." *Id.* at 1299.

In *Sagala*, the court found that a 10–year–old injured by a moving train was *sui juris* because he testified that he knew that playing on railroad tracks was dangerous. 221 N.E.2d at 373. The boy "was shown by his

own testimony to be at an age of discretion and aware of the inherent dangers of playing on the tracks." *Id.* at 375. Thus, the boy did not fall under the exception. *See also Smith*, 421 N.E.2d at 1174 (finding a 12–year–old child contributorily negligent as a matter of law where he admitted he only looked one way before crossing a two-way street).

In *Dull*, a 7–year–old child was struck and killed by a train. 52 N.E. 1013. The facts showed that the child lived near the railroad tracks, was used to them, and was instructed as to the dangers; that she often crossed the tracks on her own to go to school and run errands; and that she was "smart and intelligent" for a child of her age. *Id.* at 1017–18. The *Dull* court reversed a jury verdict for the plaintiff because the jury's special interrogatory found the child had sufficient intelligence to know the difference between danger and safety.

■ David is *sui juris* if he is capable of recognizing danger and exercising care for his safety. *See Perry*, 865 F.Supp. at 1298. Plaintiffs do not argue that David is of less than average intelligence. David was familiar with crossing railroad tracks. He did so at least twice a day on his way to and from school, and he often crossed railroad tracks to go to his friend's house. In his deposition, David stated that he had never been warned by anyone, including his parents, to stay off the railroad's premises. His father stated that he had never told David not to climb between railcars, "because [he] though [David] might have known better."

Immediately before the incident, David admits he waited for five minutes before climbing between the railcars, but "got impatient." According to David, he waited to see if the train was going to move. IHB asserts that this five minute wait demonstrates that David comprehended the danger of crossing between the railcars. Plaintiffs respond that IHB makes an assumption, yet fail to suggest any alternative inference to be drawn from David's behavior. Plaintiffs state that David was unaware of the danger because he admitted he could have an overpass.

Even without a presumption in David's favor, the Court cannot find that David was capable of recognizing the danger and exercising care for his safety as a matter of law. In a motion for summary judgment, the facts must be taken in a light most favorable to Plaintiffs, the nonmoving parties. Unlike the children in *Perry* and *Sagala*, David has not admitted that he understood the dangers of crossing between railcars. Rather, as in *Dull*, the jury should be given the opportunity to act as factfinder. Because the Court cannot find David *sui juris* as a matter of law, the Court must consider the second prong of the *Means* exception.

■ The second prong of the *Means* exception requires that the railroad had actual or constructive knowledge of the child's trespass. *Perry*, 865 F.Supp. at 1301; *Means*, 104 N.E. at 792. "Knowledge that children often frequent the vicinity over which a train travels places an affirmative duty on the railroad to exercise vigilance as to the non sui juris child." *Clayton v. Penn Cent. Transp. Co.*, 176 Ind.App. 544, 376 N.E.2d 524, 526 (1978) (reversing a grant of summary judgment where genuine issues of fact existed, including "the capacity of [the child] to understand the danger presented by the slow-moving train [and] the extent to which the railroad knew of the children's activities near and on the trains"). The duty to use reasonable care is not present "where the presence of a child on its tracks is merely possible, or where such duty of care imposes on the company an unreasonable limitation on the usual and ordinary use of its property." *Perry*, 865 F.Supp. at 1301 (quoting *Means*, 104 N.E. at 793).

All evidence supports the assertion that no one employed by IHB knew that David was on IHB property until after the accident. Thus, IHB had no actual knowledge of David's presence. However, IHB may have had constructive knowledge of David's trespassing.

Plaintiffs argue that "IHB employees know that children frequent the area where David sustained injury" and that David and his friends would cross the tracks daily near where he was injured. The depositions of several IHB employees support Plaintiffs'

constructive notice argument. In an affidavit, the chief of police for IHB, Vic Barks, testified that children sometimes come onto the railroad property near Gibson Yard. Buford Painter, an IHB engineer working at Gibson Yard, testified that he had seen individuals crossing the tracks in this area, but was unsure if they were children. Two other IHB employees who worked at Gibson Yard, Dan Pilipow and George Neff, also testified that they had seen children crossing the railroad tracks in the area where the engine was located on the day of David's injury.

IHB responds that the area where David and his friends normally crossed the tracks on their way to school is one and one-half blocks from the place of the accident. However, whether the area where David and his friends crossed the tracks constitutes a different area from where David was injured is a question of fact for the jury to decide. IHB also claims it did not have constructive notice because Plaintiffs have not identified any prior instances where individuals attempted to climb through IHB's standing railcars at or near the area where David was injured. Whether IHB knew that children had climbed on its railcars is not the issue. The issue is whether children frequent the vicinity of Gibson Yard often enough to give IHB constructive notice of David's presence. *See Clayton*, 376 N.E.2d at 526. A jury must decide whether Plaintiffs' evidence proves that IHB had constructive knowledge of children crossing in the vicinity of David's injury.

■ The duty of reasonable care is not absolute, but relative to the facts. *Clayton*, 376 N.E.2d at 526. In *McClelland v. Baltimore & OCT R Co.*, an 11–year–old boy who was injured in a switchyard when a train began moving as he crawled between two railcars prevailed in his claim against the railroad company. 123 F.2d 734 (7th Cir. 1941) The railroad company appealed, arguing that the district court should have ruled as a matter of law in its favor. *Id.* Citing *Means* and *Dickerson v. Ewin*, the Seventh Circuit found that the railroad owed the boy no duty as a trespasser because such a duty would be unreasonably burdensome. *Id.* at 738. "[T]he record clearly shows that it would

impose an unreasonable burden upon the [railroad company] to require it to employ sufficient patrolmen or additional crew members to provide adequately against such accidents as occurred here." *Id.* According to IHB, Plaintiffs seek to impose a duty to discover and prevent any children from attempting to climb through the railcars. IHB states that this duty would require one or more railroad employees to stand on each side of the train to guard against these trespassers. IHB insists that this obligation would impose an unreasonable limitation upon the usual and ordinary use of its property. Unfortunately, IHB offers no evidence to support this argument. Therefore, the Court cannot grant summary judgment on this basis.

*Count II*

■ IHB argues that Mr. Maynard's claim for loss of consortium and services is time-barred. According to Indiana Code section 34–1–2–2(1), a plaintiff has two years from when the cause of action accrued to file a claim for "injuries to personal property." Claims by parents for loss of services are injuries to personal property governed by Indiana Code section 34–1–2–2, which provides a two year statute of limitations period. *State of Indiana v. Guziar,* 680 N.E.2d 553, 555 (Ind.Ct.App.1997) (citing *Merritt v. Economy Dept. Store,* 125 Ind.App. 560, 128 N.E.2d 279, 280 (1955)). Under Indiana law, a cause of action accrues and the statute of limitations begins to run on a personal injury claim when the injurious action occurred. *Tolen v. A.H. Robins Co., Inc.,* 570 F.Supp. 1146, 1149 (N.D.Ind.1983). In this case, David was injured on May 23, 1994. Plaintiffs did not file their claim until September 27, 1996, more than two years after the accident. Plaintiffs fail to respond to IHB's argument. Thus, Mr. Maynard's claim was filed outside the statute of limitations and is time-barred. Count II is **DISMISSED.**

*CONCLUSION*

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART.**