Paul A. BAILEY, individually and as administrator of the Estate of Mark Todd Bailey, deceased, Appellant-Plaintiff,

v.

Hugo E. MARTZ and David Chidester, Appellees-Defendants.

No. 4–485A116.

Court of Appeals of Indiana, Fourth District.

Feb. 10, 1986.

Rehearing Denied April 4, 1986.

Jay T. Seeger, Gambs, Mucker, Bauman & Seeger, Lafayette, for appellant-plaintiff.

Edward N. Kalamaros, Thomas Cohen, Edward N. Kalamaros & Associates, South Bend, for appellees-defendants.

CONOVER, Judge.

Plaintiff-Appellant Paul A. Bailey (Bailey), appeals the entry of summary judg-

ment against him in an attorney malpractice action.

We affirm.

ISSUES

This appeal presents the following issues:

1. whether Bailey's decedent was guilty of contributory negligence as a matter of law,

2. whether the applicable statutes of limitation ran while defendants-appellees Hugo E. Martz (Martz) and David Chidester (Chidester) represented Bailey as his attorneys-at-law, and

3. whether the four months remaining to Bailey to obtain other counsel after Martz and Chidester withdrew gave Bailey sufficient time to employ other counsel.

FACTS

The facts and inferences before the trial court which most favor Bailey are as follows: On September 16, 1978, Bailey's thirteen-year-old son, Mark Todd Bailey (Mark), stopped the Honda 125 cc dirt bike he was riding at the stop sign on the corner of Washington and Cross Streets in Wanatah, Indiana. This intersection is 419 feet north of the Conrail Railroad crossing on Washington.

After the stop, Mark accelerated his motorbike south on Washington toward the railroad crossing, marked only with a rusty and illegible railway crossing sign. At the same time, a Conrail train was approaching it at a speed of 40 miles per hour. The train did not blow its whistle prior to entering the crossing. At that time, a southbound motorist's view of the Conrail tracks in the direction from which the train was approaching was obstructed until the motorist reached a point 75 to 100 feet North of the crossing. From that point on, the view was unobstructed.

As Mark approached the crossing, he applied the motorbike's brakes and skidded 78 feet to the crossing. He collided with the rear of the train's first engine, already in the crossing.

The Washington Street speed limit north of the crossing was not more than 30 miles per hour. Prior to the day of the accident, Mark had driven over the crossing numerous times and was familiar with it. An expert motorcycle mechanic's affidavit stated in his opinion the motorbike Mark was riding at the time could only attain a maximum speed of 40 miles per hour from a standing stop in 419 feet.

Mark suffered severe injuries. Because of this collision, he was rendered a quadriplegic.

In June, 1979, Bailey retained attorney L. Michael Yoder to represent him and his son's interests, but Yoder filed no claim against Conrail while representing them. Later, on July 11, 1979, a heart monitor Mark was wearing malfunctioned, burning him seriously. Bailey then asked Yoder to take action regarding this incident, but again Yoder did nothing.

Later, on May 28, 1980, Mark had breathing problems, was hospitalized, examined, and released. Two days after his release, Mark stopped breathing. An ambulance which had been called to the scene arrived 20 minutes after the call had been placed. During that time Mark lapsed into a coma then died June 14, 1980. Bailey again instructed Yoder to pursue this and all other claims, but again Yoder did nothing.

Bailey finally discharged Yoder and consulted Martz and Chidester on November 11, 1981. Immediately following this consultation, Martz contacted Yoder, advising him he had been consulted by Bailey. He then asked Yoder to send him Bailey's file. A portion thereof was delivered to Martz and Chidester on November 17, 1981.

These papers revealed, contrary to what Bailey had told them, Yoder had not filed suit against Conrail. Martz and Chidester then agreed to represent Bailey. They executed a written agreement with Bailey on December 30, 1981. It provided Martz and Chidester would pursue all claims arising out of Mark's injury and death, including a possible malpractice action against Yoder.

After investigating Bailey's various claims, Martz and Chidester told Yoder they believed he was guilty of malpractice.

By letter dated January 26, 1982, attorney Calvin K. Hubbell contacted Martz and Chidester. He advised them he represented Yoder and believed they were also guilty of malpractice because Bailey's case was in their hands when the applicable survival of claims statute had run. Analyzing this situation in light of attorney Hubbell's remarks, Martz and Chidester determined a possible conflict of interest between themselves and Bailey existed, that is, Bailey had a possible claim against them for malpractice. So believing, they advised Bailey thereof on February 13, 1982, and refused to represent him and his son's estate further. They confirmed their withdrawal of representation by letter to Bailey dated February 15, 1982. At the time they withdrew, Martz and Chidester also had filed no lawsuits against anyone. However, Bailey did not retain other counsel until four months later on June 14, 1982, two years to the day from the date of Mark's death.

His estate was opened in Porter Circuit Court on December 6, 1982. This cause, filed in Porter Circuit Court on February 8, 1983, was subsequently transferred to Pulaski Circuit Court, the trial court from which this appeal is taken.

Additional facts as necessary to our decision are stated below.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Summary judgment is appropriate only if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Bernhardt v. State* (1985), Ind.App., 479 N.E.2d 1367, 1368; *Taylor-Chalmers, Inc. v. Board of Commissioners of LaPorte County* (1985), Ind.App., 474 N.E.2d 531, 532; *Penwell v. Western and Southern Life Ins. Co.* (1985), Ind. App., 474 N.E.2d 1042, 1044; Ind. Rules of Procedure, Trial Rule 56(C). As this court states with drum-beat regularity

When reviewing the grant of a motion for summary judgment we stand in the shoes of the trial court. We must determine whether any genuine issue of material fact exists and whether the law was correctly applied. ... We must liberally construe all evidence in favor of the nonmovant and resolve any doubt as to the existence of a genuine issue against the proponent of the motion.... A fact is material if it facilitates resolution of any of the issues involved.... On appellate review the trial court's judgment will be affirmed on any theory or basis found in the record which supports the trial court's judgment.... A fact is "material" for summary judgment purposes, if its resolution is decisive of the action or of a relevant secondary issue.... (Citations omitted).

*Penwell*, 474 N.E.2d at 1044.

### II. *Lawyer Malpractice—Standard of Care*

The essential elements of a cause of action for attorney negligence are:

1. employment of the attorney (the duty);
2. failure of the attorney to exercise ordinary skill and knowledge (the breach) which
3. proximately causes
4. loss to the plaintiff (damages).

*See, Fiddler v. Hobbs* (1985), Ind.App., 475 N.E.2d 1172, 1173; and *cf. Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, 401.

### III. *Underlying Actions*

Bailey's[1] complaint seeking $1,000,000 in damages, alleges Martz and Chidester were guilty of malpractice because

(1) they failed to prosecute causes of action against

  (a) Conrail (statute of limitations ran),

  (b) Rehabilitation Institute of Chicago (heart monitor malfunctioned),

  (c) Attorney Yoder (prior attorney malpractice),

---

1. Individually and as administrator of Mark's estate

(d) Porter Memorial Hospital (lung stimulator malfunction), and

(e) LaPorte County Emergency Medical Services (late ambulance response), and

(2) they wrongfully withdrew from representation

(a) without good cause, and

(b) without having taken any action to preserve Bailey's claims mentioned above.

Martz and Chidester's answer denied these allegations generally, then specifically

(1) denied their actions or inactions proximately caused injury or damage to Bailey or his son's estate,

(2) alleged possible causes of action were "baned" [sic] by applicable statutes of limitations at the time this case was filed, and

(3) alleged Mark's contributory negligence was the proximate cause of his own injuries and damages.

### IV. *Summary of Contentions*

Martz and Chidester argue neither their acts nor their failure to act damaged Bailey because

(1) Mark's contributory negligence precluded recovery from Conrail, or,

(2) if not, Bailey had sufficient time to pursue the claim after their withdrawal before the statute ran,

(3) as to the other claims, no recovery was possible since Mark's estate was not opened within one year from the date of his death, required by the Probate Code as a condition precedent to recovery.

Bailey, in turn, argues

(a) Mark's contributory negligence was not, as a matter of law, the sole proximate cause of his injuries,

(b) the statute of limitations on the Conrail claim ran while Martz and Chidester represented him and his son's estate, and

(c) they wrongfully withdrew without leaving him sufficient time to employ new counsel.

### V. *Issues Argued and Evidence Presented on the Motion for Summary Judgment*

#### (a) *Contributory Negligence as a Matter of Law*

■ As to the claim Mark was contributorily negligent as a matter of law, suffice it to say the undisputed, material facts in this case, namely,

(a) Mark was familiar with the crossing and its environs,

(b) a motorist's view of approaching trains was obstructed until he was 75 to 100 feet north of the crossing,

(c) Mark saw the approaching train 75 to 100 feet north of the crossing where he had a clear view of the approaching train but

(d) had accelerated his motorbike to a speed which made it impossible for him to stop before reaching the crossing,

warranted the trial court's finding Mark was contributorily negligent and such negligence was a contributing cause of his injuries even though he was not an adult at the time of this accident.

IC 9–4–1–57, the general speed statute, provides, in part

(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, or vehicle or other conveyance on or near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care. . . . ,

and IC 9–4–1–106, dealing specially with railroad crossings, reads in part

Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of each vehicle shall stop within

fifty (50) feet but not less than ten (10) feet from the nearest track of such railroad and shall not proceed until he can do so safely, when:

.    .    .    .    .

(d) An approaching train is plainly visible and is in hazardous proximity to such crossing.

■ The subsections of IC 9–4–1–106 are disjunctive. Thus, when a vehicle approaches a railroad grade crossing, it is not necessary the train sound an audible signal for it to be "visible" within the meaning of subsection (d) thereof. *Gasich v. Chesapeake & Ohio R. Co.* (1983), Ind.App., 453 N.E.2d 371, 375.

■ A railroad crossing is a known place of danger. Drivers entering such a crossing must exercise reasonable care for their safety; this includes the duty to look and listen for approaching trains to a reasonable extent. *Consolidated Rail Corp. v. Thomas* (1984), Ind.App., 463 N.E.2d 315, 320; *Callahan v. New York Central Rwy. Corp.* (1955), 125 Ind.App. 631, 640; 125 N.E.2d 263, 267. Under Indiana law, the driver of a motor vehicle approaching a railroad crossing whose view is obstructed is required to drive at such a speed that the vehicle could be stopped by the exercise of ordinary care, once the driver sees or hears an approaching train which is so close as to constitute an imminent danger. *Kelsey v. Consolidated Rail Corp.* (1984, C.A. 7) 749 F.2d 437, 449. A motorist is guilty of negligence per se in not stopping at a railroad crossing marked with a standard crossbuck warning sign when an approaching train is clearly visible. If such negligence was a proximate or contributing cause of a collision with the train at the crossing which results in his injury or death, such motorist is guilty of contributory negligence as a matter of law, *Gasich*, 453 N.E.2d at 375–376, and may not recover on his claim, *id.* 453 N.E.2d at 374. Contributory negligence is a complete defense, independent of any negligence of the defendant. *Smith v. Diamond* (1981), Ind. App., 421 N.E.2d 1172, 1175, 32 A.L.R.4th

43. This is true even though Mark was 13 years of age at the time he was injured.

■ In Indiana, children under the age of 7 years are conclusively presumed to be incapable of being contributorily negligent, from 7 to 14 a rebuttable presumption exists they may be guilty thereof, and over 14, absent special circumstances, they are chargeable with exercising the standard of care of an adult. *Diamond*, 421 N.E.2d at 1177–1179. In *Diamond* we concluded under similar facts, a child 12 years old was chargeable with contributory negligence as a matter of law. Here, the facts warrant the same conclusion.

The standard of care regarding children in the second age category, as Judge Miller notes, is

> whether he exercised the care under the circumstances of a child of like age, knowledge, judgment and experience.

*Diamond*, 421 N.E.2d at 1179. The undisputed facts here, as in *Diamond*, reveal Mark was a normal, healthy boy of 13 who must be deemed to know the perils of approaching a railroad crossing with which he was familiar at such an excessive rate of speed as to make it impossible for him to stop his motorbike before entering the crossing. It must be recognized it is in the nature of boys to engage in dangerous acts. *Cf. City of Evansville v. Blue* (1937), 212 Ind. 130, 140, 8 N.E.2d 224, 229; *Diamond*, 421 N.E.2d at 1179. Mark was guilty of contributory negligence as a matter of law. Such negligence precluded his recovering damages from the railroad as a matter of law because it was a contributing cause of his injuries. However, this conclusion is not dispositive of the malpractice action we here consider even had a submissible jury question been present.

(b) *Mark's Negligence Claim Against Conrail Not Barred by the Applicable Statute of Limitations While Defendants Represented Bailey*

The parties agree Martz and Chidester represented Bailey from November 11, 1981, through February 13, 1982. The motorcycle-train collision which resulted in

Mark's injuries occurred on September 16, 1978. Mark was 13 years old at the time.[2]

Generally, a cause of action for injury to the person must be brought within two years after the cause of action has accrued. IND. CODE 34-1-2-2(1).[3] A cause of action accrues when injury is produced by a wrongful act or omission. *See, e.g., Walker v. Memering* (1984), Ind.App., 471 N.E.2d 1202, 1203. However, one who is under a legal disability[4] when the cause of action accrues may bring his action within two years after the disability is removed. IC 34-1-2-5.[5] Thus, had Mark lived, running of the applicable statute of limitations would have been tolled until July 28, 1982, his 18th birthday. Because Mark did not live, however, his right to recover damages because of Conrail's alleged negligence, was a chose in action which passed on his death to his personal representative. *Cf., Indianapolis and Vincennes Railway Co. v. Price* (1899), 153 Ind. 31, 32, 53 N.E. 1018, 1019; *Harshbarger v. Midland Railway Co.* (1892), 131 Ind. 177, 181, 30 N.E. 1083, 1084.

Bailey contends the statute of limitations for the claim against Conrail ran, under IND.CODE 34-1-2-7,[6] on December 14, 1981, or 18 months after Mark's death when he was still represented by Martz and Chidester. They argue to the contrary, the estate's claim against Conrail was not barred until July 28, 1984, two years after Mark would have reached 18 years of age, or two years and five months after they ceased representing Bailey. Neither party is correct.

Contrary to Bailey's claim, IC 34-1-2-7 does not apply here. Our Supreme Court has determined this code section applies only to cases where the party dies after the applicable statute of limitations has begun to run and before the time limit has expired. Here, however, the applicable limitations statute was not running at the time Mark died. Further, the Supreme Court determined the effect of this section is to *extend* the time of limitations only, *never* to diminish it. *See Emerick, Administrator v. Chesrown* (1883), 90 Ind. 47, 49. *Harris v. Rice, Administrator* (1879),[7] 66 Ind. 267, 270; *see also McNear v. Roberson* (1894), 12 Ind.App. 87, 90, 39 N.E. 896, 897. The application for which Bailey contends would have shortened the 2 year period for the filing of this action by 6 months. IC 34-1-2-7 is not the statute of limitations which applies here.

Martz and Chidester's contention the estate's claim against Conrail would not have been subject to a statute of limitations defense before July 28, 1984, two years after Mark's 18th birthday, also is without merit. Mark's death removed his legal age disability. At that time, choses in action as to all possible claims accrued to his personal representative, *Price, Harshbarger, supra,*

---

2. Mark was born July 28, 1964.

3. 34-1-2-2 General limitations, reads in part
   Sec. 2. The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards:
   (1) For injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two (2) years.

4. 34-1-67-1 Words and phrases, reads in part
   Sec. 1. In the construction of this article, the following rules shall be observed, when consistent with the context:

   .     .     .     .     .

   (c) The phrase "under legal disabilities" includes *persons under the age of eighteen (18) years,* or of unsound mind, or out of the United States. (Emphasis supplied).

5. 34-1-2-5 Legal disabilities; accrual of action, reads in part
   Sec. 5. Any person being under legal disabilities when the cause of action accrues may bring his action within two (2) years after the disability is removed.

6. 34-1-2-7 Death of parties; survival of action, reads in part
   Sec. 7. If any person entitled to bring, or liable to, any action, shall die before the expiration of the time limited for the action, the cause of action shall survive to or against his representatives, and may be brought at any time after the expiration of the time limited within eighteen (18) months after the death of such person.

7. Then § 298, R.S. 1881, now IC 34-1-2-7.

and the applicable two year statute of limitations[8] began to run.

Thus, all Mark's causes of action were not subject to the statute of limitations defense until after June 14, 1982, two years after Mark's death and four months after Martz and Chidester withdrew their representation of Bailey. However, this does not perforce determine the companion question of whether or not Martz and Chidester were negligent in failing to preserve this or any other claim, discussed later in this opinion. It merely shows the applicable statute of limitations did not run while Martz and Chidester represented Bailey and his son's estate, as to any of their choses in action.

**(c)** *Bailey's Claims Were Not Barred by Failure to Open an Estate Within One Year of Mark's Death*

Martz and Chidester contend Bailey's claim for medical or other expenses against the various claimed tortfeasors was barred because no estate was opened within one year of Mark's death, citing IND. CODE 29–1–14–1(a) and (d). This contention also is meritless. By its terms, IC 29–1–14–1[9] bars only claims *against* an estate, not those which accrue to it. The statute is a non-claim statute, not a statute of limitations. It establishes conditions precedent to recovery against an estate. *Pasley v. American Underwriters, Inc.* (1982), Ind.App., 433 N.E.2d 838, 840.

Martz and Chidester further assert Mark's estate has no claim for medical expenses under IND. CODE 34–1–1–2 be-

cause the wrongful death statute was intended to "exclusively benefit health care providers." I.C. 34–1–1–2 provides, in part

.        .        .        .        .

That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the *exclusive benefit of the decedent's estate* . . . . If such decedent depart this life leaving no such widow or widower, or dependent children or dependent next of kin, surviving her or him, the damages inure to the exclusive benefit of the *person or persons furnishing necessary and reasonable hospitalization or hospital services* in connection with the last illness or injury of the decedent, . . . and to the personal representative, as such, for the necessary and reasonable costs and expenses of administering the estate and prosecuting or compromising the action, . . . and such costs and expenses of administration, including attorney fees. (Emphasis supplied).

However, I.C. 34–1–1–2 does not apply to Bailey's cause of action for Mark's wrongful death. I.C. 34–1–1–8 governs causes of action for damages for the wrongful death of a child. It specifically provides such an action may be instituted by the child's parents without the opening of a decedent's estate for the child. Further, the amount of damages which may be recovered in such an action is not limited as is the case in an action under I.C. 34–1–1–2. *See, Hahn v. Moore* (1956), 127 Ind.App. 149, 133 N.E.2d 900, rehearing denied 127 Ind.

---

**8.** IC 34–1–2–2(1), see note 3.

**9.** 29–1–14–1 Limitations; filing; claims barred or not; liens, tort claims

Sec. 1. (a) All claims against a decedent's estate, other than expenses of administration and claims of the United States, and of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees and legatees of the decedent, unless filed with the court in which such estate is being administered within:

(1) five (5) months after the date of the first published notice to creditors; or
(2) three (3) months after the court has revoked probate of a will, in accordance with IC 29–1–7–21, if claimant was named as a beneficiary in that revoked will;
whichever is later.

.        .        .        .        .

(d) All claims barrable under the provisions of subsection (a) hereof shall, in any event, be barred if administration of the estate is not commenced within one (1) year after the death of the decedent.

App. 149, 134 N.E.2d 705, trans. den'd. (Measure of damages to parent for death of child is value of child's services from time of death to age of majority plus expenses necessary due to injury, less costs of support and maintenance. Statute giving parent action for wrongful death of child [now I.C. 34–1–1–8] not in *pari materia* with wrongful death act [now I.C. 34–1–1–2]). *Cf. Miller v. Mayberry* (1984), Ind.App., 462 N.E.2d 1316 (loss of love and affection improperly considered as damages); *Boland v. Greer* (1980), Ind.App., 409 N.E.2d 1116 (recovery restricted to pecuniary loss).

(d) *Refusal to Continue Representation*

Finally, Bailey complains Martz and Chidester's withdrawal from representation was wrongful because

(1) they withdrew without good cause,

(2) they took no action to preserve the causes of action which had accrued to him and his son's estate, and

(3) their withdrawal came so late, Bailey was unable to obtain counsel to protect his and the estate's interests.

While Bailey technically has not preserved this issue for consideration because it was not mentioned in his motion to correct errors, we deem it implicit in this appeal and necessarily involved in a full determination of the issues previously discussed. Thus, we will consider it.

■ The relationship between an attorney and his client once established must be one of mutual trust and confidence so that the client's best interests are served. Special strictures are placed upon attorneys by our *Code of Professional Responsibility* which require total dedication to a client's cause. If the attorney perceives a conflict of interest between himself and his client after the attorney-client relationship is established, he must withdraw his representation of the client. *Cf, Code of Professional Responsibility, Ethical Consideration 5–2;* DR 5–101. Attorneys must not allow their private interests to conflict with those of their clients. They owe their en-

tire devotion to the interests of their clients. *United States v. Anonymous,* (E.D.Tenn.1963) 215 F.Supp. 111.

■ Here, because of attorney Hubbell's belief Martz and Chidester were guilty of malpractice because the applicable statute of limitations had run while they represented Bailey and his son's estate,[10] Martz and Chidester erroneously believed their clients had a chose in action for malpractice against them. Under these circumstances, they were justified in withdrawing, as was the attorney accused of stealing his client's property in *Hawblitzel v. Hawblitzel* (1983), Ind.App., 447 N.E.2d 1156, 1158.

■ However, when a lawyer withdraws from representation, he has a professional obligation to protect the interests of his client. *Hawblitzel,* 447 N.E.2d at 1159; *Ashbrook v. Ashbrook* (1977), 174 Ind.App. 134, 366 N.E.2d 667, 671. Martz and Chidester did so in this case. Our *Code of Professional Responsibility* charts a precise course by which responsible withdrawal is accomplished in such situations, as noted by Judge Garrard in *Hawblitzel.* There he said

As our Code of Professional Responsibility requires:

"Even when he justifiably withdraws, a lawyer should protect the welfare of his client by giving due notice of his withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which the client is entitled, cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm."

Code of Professional Responsibility, Ethical Consideration 2–32.

*Hawblitzel,* 447 N.E.2d at 1159.

Martz and Chidester complied with these requirements by having a conference on the subject with their client and his wife on February 13, 1982, and by Martz's forwarding a letter to them dated February 15, 1982. This letter read, in part

---

**10.** An incorrect assumption, as discussed above.

Dear Paul and Sharon:

This is intended to summarize the personal conference which David Chidester and I had with you Saturday morning, February 13, 1982, in our office.

We provided you with a copy of Mr. Hubbell's letter dated January 26, 1982, which you read and took with you. We indicated to you that we could not proceed any further with your case regarding Mark's injury and death, because we now have been placed in a conflict of interest position as a result of Mr. Yoder's counter-allegations against us. We advised you that if you are to proceed further, you will have to consult with other legal counsel.

.         .         .         .         .

While you were in the office, I called Mr. Hubbell to clarify his position in this matter. I asked him if he is representing Mr. Yoder in this matter to which he replied yes. I also asked him what Mr. Yoder's current position is regarding liability to you. Mr. Hubbell replied that since we had assumed your file, Mr. Yoder had no further legal responsibility and if anyone is responsible, we are solely responsible.

If you have any questions, please feel free to contact us. Obviously, however, because of the position which Mr. Yoder has taken through his attorney, Mr. Hubbell, we cannot ethically represent you any further in this matter.

(R. 278–279).

Clearly, the four months left to Bailey to employ other counsel was a reasonable time within which to accomplish that task. In fact, Bailey discussed his claims with five additional lawyers between February 13 and June 14, 1982, the day upon which the applicable statute of limitations as to Bailey's claims ran. (R. 70–71). While Bailey was unsuccessful in retaining counsel until the day before the statute ran, Martz and Chidester were not required to obtain replacement counsel as a condition of their withdrawal from representation. Their sole obligation in this regard was only to give their former client a rea-

sonable time to employ other counsel. This they did. However, the lawyers then consulted by Bailey were not obligated to take Bailey's case, *cf. Code of Professional Responsibility, Ethical Consideration* 2–26.

We find no error.

Affirmed.

YOUNG, P.J., and MILLER, J., concur.