**CLAY CITY CONSOLIDATED SCHOOL CORPORATION,**
Appellant–Defendant,

v.

**Ronna TIMBERMAN and John Pipes II, Appellees–Plaintiffs.**

No. 11A04–0802–CV–96.

Court of Appeals of Indiana.

Dec. 2, 2008.

Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, IN, Attorney for Appellant.

Richard A. Waples, Waples & Hanger, Indianapolis, Keith L. Johnson, Johnson Law Office, Terre Haute, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Clay City Consolidated School Corporation (Clay City Schools), appeals the trial court's denial of its motion to correct error and Order on remittitur awarding Appellees–Plaintiffs, Ronna Timberman (Mother) and John Pipes II (Father), $300,000 after a jury verdict.

We reverse and remand.

### ISSUES

Clay City Schools raises seven issues for our review, one of which we find dispositive and restate as: (1) Whether the trial court abused its discretion by instructing the jury in Final Instruction No. 20 that a thirteen-year-old boy is presumed to be incapable of contributory negligence.

Because we conclude that the trial court committed reversible error by issuing Final Instruction No. 20, we also consider the following issues to forestall unnecessary disputes upon remand and duplicative issues for another appeal, although Mother and Father correctly point out that Clay City Schools would have waived appellate review of several of these issues:

(2) Whether Mother and Father's possible negligence can be considered for purposes of contributory negligence;

(3) Whether the trial court abused its discretion by instructing the jury in

Final Instruction No. 9 that Mother and Father had not released Clay City Schools from its negligence;

(4) Whether the trial court abused its discretion by instructing the jury in Final Instruction No. 16 that Clay City Schools was required to antici-pate and guard against conduct of children by which the child may harm himself or others;

(5) Whether the trial court abused its discretion by instructing the jury that it *may* find for the defendant if it found any negligence on the part of Kodi Pipes which proximately contributed to his injuries in Final Instruction No. 24;

(6) Whether the trial court abused its discretion when instructing the jury on proximate cause in Final Instruc-tion Nos. 19, 21, 25.[1]

## FACTS AND PROCEDURAL HISTORY

On Monday, November 17, 2003, thir-teen-year-old Kodi Pipes (Kodi) blacked out and fell down during the beginning of his eighth grade basketball team practice at Clay Jr. High School. Kodi stood back up and walked to the sideline. The eighth grade basketball coach, Mike Ames (Coach Ames), saw Kodi bent over with his hands on his legs and approached him to ask what was wrong. Kodi complained of diz-ziness, and Coach Ames asked the seventh grade basketball coach, Rodney Smith (Coach Smith), to check on Kodi. Because Coach Smith was aware that Kodi had asthma, Coach Smith asked Kodi if he had used his inhaler. Kodi responded that he had, but that he did not feel that his asthma was the cause of his dizziness. Kodi further advised Coach Smith that he had not eaten that day. When Coach Smith told Coach Ames that Kodi had not

eaten that day, Coach Ames prohibited Kodi from participating in practice, but allowed him to shoot free throws.

After practice, Coach Ames waited with the players until they were all picked up as usual. Coach Ames went to the car with Kodi and spoke with Mother and her then-boyfriend, Aaron Erbert (Erbert). Coach Ames told Mother that Kodi had felt dizzy during practice and stated that he had not eaten. Kodi agreed and Mother said they would make sure he got something to eat.

According to Mother and Erbert, Moth-er told Coach Ames that she did not want Kodi participating in practice until after he was checked out by a doctor. They fur-ther testified that Kodi complained about getting behind, and Mother modified her instruction to Coach Ames by stating that Kodi could walk through the plays but was not to participate in running or strenuous activity. They both stated that Coach Ames agreed to this restriction. Coach Ames testified that no conversation took place on restricting Kodi's level of activity at practice.

Kodi went home, ate some pizza, and then did his homework. He appeared to be fine. On Tuesday, Mother made phone calls to Kodi's general practitioner and a neurologist in Terre Haute, Indiana. Kodi attended school Tuesday and Wednesday without incident, and Mother made no fur-ther communications with the school nurse or Coach Ames regarding Kodi's blackout at practice. On Wednesday, Kodi attend-ed two after-school meetings and then went with his grandfather, Ronald Timber-man (Grandfather), to A & W to get some-thing to eat. Grandfather drove Kodi home and then back to school for basket-ball practice at 7:00 p.m. Grandfather testi-fied that he asked Kodi if he knew the plan

---

1. Because we find reversible error on the first issue raised by Clay City Schools, we do not address Clay City School's contention of cu-mulative error.

for practice, referring to his restriction, and that Kodi replied that he did. Kodi had not seen a doctor prior to basketball practice on Wednesday night.

Kodi showed up for basketball practice, and Coach Ames asked him if he had eaten. Kodi responded that he had. Coach Ames assumed that Kodi was okay to practice and let him participate without restrictions. Towards the end of practice, Coach Ames had the players perform a running drill. Early in the drill, Kodi collapsed. Coach Ames went over to Kodi and determined he was not breathing and did not have a pulse. He performed CPR on Kodi alone until Ron Travis and Doug Gurkey arrived to help. The three men kept performing CPR until EMTs arrived; however, efforts to revive Kodi were unsuccessful. It was later determined that Kodi had died from a malignant type of heart rhythm abnormality known as ventricular fibrillation.

On August 25, 2006, Mother and Father filed a Complaint alleging that Clay City Schools was liable for Kodi's death under Indiana's Child Wrongful Death Statute, Ind.Code § 34–23–2–1. On September 18, 2006, Clay City Schools filed its answers and asserted that it was not the proximate cause of Kodi's death. On December 10 through 13, 2007, the case was tried to a jury. On December 13, 2007, the jury returned a verdict in favor of Mother and Father, awarding Mother $250,000 and awarding Father $175,000. That same day, the trial court entered an Order and Judgment on the verdict.

On January 10, 2008, Clay City Schools filed a motion for remittitur, which the trial court granted on February 8, 2008. The trial court ordered the award to Mother to be reduced to $176,470.57, and the award to Father to be reduced to $123,529.43.[2] That same day, the trial court denied Clay City Schools' motion to correct errors.

Clay City Schools now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Final Instruction No. 20*

■ Clay City Schools first argues that the trial court erred by instructing the jury that Indiana law contains a rebuttable presumption that children between the ages of seven and fourteen years are incapable of committing contributory negligence. Specifically, the trial court's final instruction number twenty instructed the jury that:

In deciding whether Kodi Pipes was contributorily negligent, you should know that Indiana law recognizes a rebuttable presumption that children from the age of 7 to 14 years of age are rebuttably presumed to be incapable of [contributory] negligence.

A "rebuttable presumption" means that if you find Clay School Corporation has not presented evidence to show that Kodi Pipes' own negligence contributed to his death, you should presume that Kodi Pipes was not contributorily negligent. If, on the other hand, you find that Clay School Corporation has presented evidence to show that Kodi Pipes was contributorily negligent then you should weigh that evidence against both

---

2. Clay City Schools states that the trial court entered its Order on remittitur and entered its Order denying the motion to correct errors on February 8, 2008. (Appellant's Br. p. 6). However, the Appellant's Appendix contains an Order on remittitur clearly dated January 14, 2008, but no Order on any motion to correct errors. (Appellant's App. p. 12). The CCS has an entry for an Order on remittitur on January 16, 2008, and an Order on remittitur and motion to correct errors on February 8, 2008.

the presumption that children between 7 and 14 are rebuttally [sic] presumed to be incapable of contributory negligence, through their own negligence, to their injuries and any evidence that Kodi Pipes' negligence did not contribute to his death in deciding the issue of whether Kodi Pipes was contributorily negligent.

(Appellant's App. p. 31).[3]

 Instruction of the jury is left to the sound judgment of the trial court, and our review of a trial court's decision in this regard is highly deferential: we will not disturb the court's judgment absent an abuse of discretion. *Kostidis v. Gen. Cinema Corp. of Indiana*, 754 N.E.2d 563, 570 (Ind.Ct.App.2001). In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. *Wal–Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 893 (Ind.2002) *reh'g denied.* "The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion. When an instruction is challenged as an incorrect statement of the law, however, appellate review of the ruling is de novo." *Id.*

By giving Final Instruction No. 20, the trial court has reopened the proverbial can of worms addressed at length most recently by the Federal District Court for the Northern District of Indiana in *Maynard v. Indiana Harbor Belt Railroad Co.*, 997 F.Supp. 1128 (N.D.Ind.1998). The *Maynard* court addressed whether Indiana has a presumption as to a seven-to-fourteen-year-old child's capacity to exercise care and discretion and came to the conclusion that the answer was unclear. *Id.* at 1132. The *Maynard* court's thorough analysis greatly aids our discussion here.

In *Bottorff v. South Constuction Company*, 184 Ind. 221, 110 N.E. 977 (1916), our supreme court considered the trial court's dismissal of a complaint alleging that a fourteen-year-old boy had taken blasting caps from a construction company's property and given them to a twelve-year-old boy who then proceeded to blow off part of his hand and injure his eye. *Id.* at 978. The *Bottorff* court noted that the complaint alleged the twelve-year-old plaintiff to be ignorant of the danger and peril in handling the caps, but had not alleged that the fourteen-year-old "did not understand the nature of the caps." *Id.* Thus, the *Bottorff* court concluded that the fourteen-year-old boy who had committed trespass and larceny in taking the caps was an intervening cause of the twelve-year-old's injuries, and as such the trial court had not erred by granting the construction company's demur to the complaint. However, in dicta, the *Bottorff* court noted that a child between the ages of seven and fourteen "is presumed to be incapable of committing crimes, but the presumption may be rebutted by proof that the infant possessed

---

**3.** Mother and Father first contend that Clay City Schools has waived any challenge to trial court's Final Instruction No. 20 because it did not write out the instruction or its objection thereto verbatim in the argument section of its Appellant's Brief as required by Ind. Appellate Rule 46(A)(8)(e). However, Clay City Schools substantially complied with our Appellate Rules by writing out the instruction verbatim in the Statement of the Case section of its Appellant's Brief, and by summarizing its objection thereto with a citation to the record. Because we prefer to decide issues on the merits, we choose to review Clay City Schools' arguments on this issue. *See Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mutual Ins.*, 837 N.E.2d 1032, 1036 (Ind. Ct.App.2005), *reh'g denied; see also Kelly v. Levandoski*, 825 N.E.2d 850, 856 (Ind.Ct.App. 2005), *trans. denied.*

sufficient discretion to be aware of the nature of the act.... It seems that the greater weight of authority is to the effect that the same rule applies in negligence cases." *Id.* at 978; *see also Maynard,* 997 F.Supp. at 1133.

In *Smith v. Diamond,* 421 N.E.2d 1172 (Ind.Ct.App.1981), a twelve-year-old child, who was struck by a car when he admittedly did not look both ways prior to crossing a street, was held to be contributorily negligent as a matter of law. *Id.* at 1179. In coming to this determination, the *Smith* court noted that the law pertaining to contributory negligence of children and minors and the standard of care to be applied to them was the subject of critical commentary and numerous appellate opinions, but "clear guidelines have proved elusive." *Id.* at 1176. Further, the *Smith* court explained that various commentaries have concluded that in Indiana "no cases have been found in which the courts use presumptions in favor of a child between the ages of seven and fourteen." *Id.* at 1177 (citing Note, Contributory Negligence of Children in Indiana: Capacity and Standard of Care 34 Ind. L.J. 511, 517 n. 37 (1959)). In spite of the *Smith* court's inconclusive analysis of whether Indiana law contains a presumption regarding whether children between the age of seven and fourteen can be contributorily negligent, the *Smith* court did state with certainty that "[i]n this jurisdiction, as in Illinois and many other states ... the standard of care of a child who is old enough to be capable of contributory negligence is whether he exercised the care under the circumstances of a child of like age, knowledge, judgment and experience." *Smith,* 421 N.E.2d at 1179.

Applying this standard, we believe that in the instant case where the uncontradicted evidence was that the plaintiff Smith was an essentially normal 12-year-old boy, three months short of being 13, it follows from the evidence the court would have been justified in concluding he was contributorily negligent as a matter of law in crossing behind a southbound vehicle on a trafficked highway while admittedly failing to look for any northbound autos.

*Id.*

Later, we cited to *Smith* when stating that a rebuttable presumption exists that children between the ages of seven and fourteen may be found guilty of negligence. *Bailey v. Martz,* 488 N.E.2d 716, 721 (Ind.Ct.App.1986), *trans. denied.* Despite this statement, we further expressed that the standard of care regarding children from the age of seven to fourteen is "whether he exercised the care under the circumstances of a child of like age, knowledge, judgment and experience." *Id.* In light of this standard we explained that the healthy thirteen-year-old boy that had been injured "must be deemed to know the perils of approaching a railroad crossing with which he is familiar." *Id.* From this acknowledgement, we concluded that the boy had been contributorily negligent as a matter of law. *Id.*

More recently, our supreme court addressed in dicta the standard of determining the liability of children for their alleged tortious acts in *Creasy v. Rusk,* 730 N.E.2d 659 (Ind.2000). The *Creasy* court directly quoted *Bailey,* stating: "[C]hildren under the age of 7 years are conclusively presumed to be incapable of being contributorily negligent, from 7 to 14 a rebuttable presumption that they may be guilty thereof, and over 14, absent special circumstances, they are chargeable with exercising the standard of care of an adult." *Id.* at 662 (citing *Bailey,* 488 N.E.2d at 721). Thereafter, the *Creasy* court clarified: "In the age seven to fourteen category, Indiana applies the Restate-

ment standard and ascertains whether the child exercised the care under the circumstances of a child of like age, knowledge, judgment, and experience." *Creasy,* 730 N.E.2d at 662.

■ Here, the trial court's Final Instruction No. 20 closely followed Mother and Father's proposed instruction number twelve, which stated in part that "Indiana law recognizes a rebuttable presumption that children from the age of 7 to 14 years of age do not contribute to their own injuries through their own negligence." (Appellant's App. p. 59). In their proposed jury instruction number twelve, Mother and Father cited to: *"Creasy v. Rusk,* 730 N.E.2d 659, 662 (Ind.2000) (citing *Bailey v. Martz,* 488 N.E.2d 716, 721 (Ind.Ct.App. 1986) in turn citing *Smith v. Diamond,* 421 N.E.2d 1172, 1177–79 (Ind.Ct.App.1981))." (Appellant's App. p. 59). The language which Mother and Father must have been relying upon from *Creasy* is the statement: "from 7 to 14 a rebuttable presumption exists they may be guilty thereof." *Creasy,* 730 N.E.2d at 662 (quoting *Bailey,* 488 N.E.2d at 721 (in turn citing *Smith,* 421 N.E.2d at 1177–79))). However, this language in *Creasy* does not mean that Indiana law presumes children between the age of seven and fourteen cannot be contributorily negligent, as the trial court stated in Final Instruction No. 20. If anything, it means the opposite: that in Indiana, it is rebuttably presumed that children between the age of seven and fourteen may be liable for their negligent acts. *See Maynard,* 997 F.Supp. at 1133.

Not that Mother and Father's interpretation of *Creasy* is wholly without support. In *Mangold ex rel. Mangold v. Indiana Department of Natural Resources,* 756 N.E.2d 970, 976 (Ind.2001), Justice Rucker, with Justice Dickson concurring, interpreted *Creasy* by stating that "children between the ages of seven and fourteen are rebuttably presumed to be incapable of contributory negligence." *Id.* (citing *Creasy,* 730 N.E.2d at 662). However, on the issue of contributory negligence, Chief Justice Shepard wrote for the majority, which concluded that because contributory negligence principles only required a showing of minimal negligence, the trial court did not error in finding that a twelve-year-old boy who smashed live ammunition with a hammer and chisel despite recent firearm safety instruction was contributorily negligent as a matter of law. *Mangold,* 756 N.E.2d at 977. The majority did not acknowledge any presumption in favor of or against the twelve-year-old boy. *Id.*

■ Additionally, Mother and Father's interpretation is supported by language from our decision in *Brockmeyer by Brockmeyer v. Fort Wayne Public Transportation Corporation,* 614 N.E.2d 605, 607 (Ind.Ct.App.1993), *reh'g denied, trans. denied,* which stated: "Indiana appears to follow the rule that children under the age of seven cannot be guilty of contributory negligence, that those between the ages of seven and fourteen are rebuttably presumed incapable of negligence, and those over fourteen are generally held to the same standard of care as an adult." However, the Indiana cases relied upon by the *Brockmeyer* court for this proposition do not contain any such conclusive pronouncement of a presumption in favor of seven to fourteen-year-olds. Specifically, the *Brockmeyer* court cites first to *Smith,* which, as we have explained above, did not hold that Indiana law contains a presumption either in favor of or against children between seven and fourteen. Additionally, *Brockmeyer* cites to *Maldonado by Maldonado v. Gill,* 502 N.E.2d 1371, 1373 (Ind. Ct.App.1987), *reh'g denied, trans. denied.* However, the only mention of a presumption in *Maldonado* is as follows:

In a recent case involving a child struck by a vehicle, in which these same statutes were at issue, it was held that the violation of a statute by a child must not be considered in the light of any presumption of negligence. *Baller by Baller v. Corlel*, 490 N.E.2d 382, 385 (Ind. Ct.App.1986), *reh'g denied, trans. denied*] (Buchanan, C.J., dissenting). Rather, the correct standard for a child between seven and fourteen is for the child to exercise due care for his own safety under the circumstances and that the care required is to be measured by that ordinarily exercised under similar circumstances by children of the same age, knowledge, judgment and experience. *Id.*

Finally, *Brockmeyer* cited to *Baller*, which specifically stated on the issue of presumptions for seven to fourteen-year-olds:

In Indiana, no adverse presumption exists as to a child between seven and fourteen, to the contrary, there is commentary to the effect that a favorable presumption exists as to such child-that he is presumed incapable of negligence, although the presumption may be rebutted [*See Smith*]. On the other hand, it may be that no presumption, either favorable or adverse, exists, with respect to a child over seven. [*See Smith*]. In any event, it is correct to say that a child between seven and fourteen is required to exercise due care for his own safety under the circumstances and that the care required is to be measured by that ordinarily exercised under similar circumstances by children of the same age, knowledge, judgment and experience.

*Baller*, 490 N.E.2d at 385. Therefore, in spite of the language in *Mangold* and *Brockmeyer*, we conclude that Indiana law does not conclusively contain a presumption either in favor or against seven to fourteen-year-olds with respect to whether they can be found liable for their negligent acts. Thus, we conclude that the trial court's Final Instruction No. 20, which informed the jury that Indiana law contains a rebuttable presumption that children between the ages of seven and fourteen cannot be contributorily negligent, was a misstatement of Indiana law.

 That being said, we conclude from our review of *Creasy, Bailey, Maldonado, Baller,* and *Smith,* that the focus of Indiana law on the issue of when a child age seven to fourteen can be held liable in negligence for his or her acts is primarily determined by an inquiry into whether the child exercised the level of care that should be expected of a child of like age, knowledge, judgment, and experience in that situation. All of these decisions acknowledge this standard of care and *Bailey, Maldonado, Baller,* and *Smith* focused on that standard to determine the outcome of the case. *See Creasy,* 730 N.E.2d at 662; *Bailey,* 488 N.E.2d at 721; *Maldonado, 502 N.E.2d at 1373; Baller, 490 N.E.2d at 385; Smith,* 421 N.E.2d at 1179. Indeed, Indiana Pattern Jury Instruction No. 5.25, "Negligence or Contributory," states in pertinent part: "A child age seven (7) through the age of fourteen (14) must exercise the same care that a reasonably careful child of the same age, knowledge, judgment, and experience would exercise in the same situation." However, there is no pattern instruction on a presumption for this age group. Further, our supreme court has stated that an instruction on standard of care is required if warranted, but made no mention of whether an instruction should be given regarding any presumption. *Kurowsky v. Deutsch,* 533 N.E.2d 1210, 1214 (Ind.1989) ("[I]n a civil action for negligence if the evidence warrants it, a jury must be instructed that where a child has disobeyed a statute, he

may excuse or justify the violation by sustaining the burden of showing the violation occurred despite his exercise of that degree of care which would ordinarily be exercised by a child of the same age, experience, intelligence and education level."). Thus, we conclude that any jury instruction on the contributory negligence of a child between the age of seven and fourteen should focus on the standard of care for children of that age group—not on any presumption either in favor of or against finding them liable for their acts.

█ "When a jury instruction incorrectly states the law, we assume that the erroneous instruction influenced the verdict and will reverse unless the verdict would have been the same under a proper instruction." *Wal–Mart*, 774 N.E.2d at 895. Here the trial court gave the jury an instruction on the applicable standard of care for children between the age of seven and fourteen. Nevertheless, by instructing the jury that it should consider any evidence of Kodi's negligence in light of a rebuttable presumption that he could not be contributorily negligent, we cannot say that the verdict would have been the same despite the erroneous instruction. Therefore, we must reverse and remand for a new trial.

### II. Omission of Mother and Father from the Consideration of Contributory Negligence

Next, Clay City Schools contends that the trial court erred by failing to instruct the jury that it could consider any negligence of Mother and Father in light of the fact that Mother and Father were suing based on their own losses under the child wrongful death statute, I.C. § 34–23–2–1.

█ As a general rule, where the death of a child results from concurring negligence of its parent or parents and that of a third person and under the appli-cable statute the damages recoverable for the death of the child are solely for the benefit of the parent whose negligence contributed to the child's death, such contributory negligence bars any recovery against the third person on account of the child's death. 2 A.L.R.2d 785 (1948). We have incorporated this rule in Indiana law by our decision in *Indianapolis St. Railway Co. v. Antrobus*, 33 Ind.App. 663, 71 N.E. 971 (1904). In *Antrobus*, the father of a six-year-old boy sued after his son was killed by a streetcar. We stated:

> If the child was the plaintiff, the negligence of the parent would not be imputed to it; but the father is the plaintiff, and seeks to recover because of the negligence of the defendant. In such case the negligence of the parents is a proper question for the consideration of the jury.

*Id.* at 972. Thus, we conclude that, if requested by Clay City Schools, the trial court would be required to instruct the jury that it can consider possible negligence on the part of Mother and Father that may have proximately caused Kodi's death for purposes of contributory negligence.

### III. Final Instruction No. 9

Clay City Schools argues that the trial court abused its discretion by instructing the jury that Mother and Father had not released Clay City Schools from its negligent acts. The instruction on this matter was trial court's Final Instruction No. 9, which stated:

> As a matter of law, the plaintiff's [Mother] and [Father] have not released the defendant Clay Community Schools from any alleged negligent acts when the release forms at issue contain language expressly addressing the risks inherent in athletic participation, but nowhere expressly state the release of

Clay Community Schools or its agents from their own negligence.

(Appellant's App. p. 20). Clay City Schools specifically contends that this instruction was not warranted or made applicable by the evidence presented at trial, because the release form submitted to the jury had been redacted to remove certain language.[4] However, since Clay City Schools has not provided us with a version of the release form that has not been redacted or given us the specific language that was removed, we must evaluate this issue based upon the language of the redacted release form that has been supplied in the record.

■■■ At trial, the trial court admitted as evidence a redacted version of a release form (Exhibit 3), which Kodi and Mother had signed so that Kodi would be permitted to participate in athletics. Specifically, Exhibit 3, stated in pertinent part:

I know that athletic participation is a privilege. I know of the risks involved in athletic participation, understand that serious injury, and even death, is possible in such participation, and choose to accept such risks. I voluntarily accept any and all responsibility for my own safety and welfare while participating in athletics, with full understanding of the risks involved.

* * *

I/we know of and acknowledge that my son/daughter knows of the risks involved in athletic participation, understands that serious injury, and even death, is possible in such participation and chooses to accept any and all responsibility for his/her safety and welfare while participating in athletics. With full understanding of the risks involved.

(Plaintiff's Ex. 3).

Clay City Schools compares the language of Exhibit 3 to the language of a release form admitted as evidence in *Stowers v. Clinton Central School Corp.*, 855 N.E.2d 739, 748 (Ind.Ct.App.2006). In *Stowers*, we considered an appeal from a jury trial involving a high school football player who was overcome by heat related illness during football practice and eventually died from his injuries. The release form, signed by the football player's mother, and admitted as evidence, acknowledged that there was a risk of serious injury and even death from athletic participation and that the signor accepted all responsibility for the young man's safety. *Id.* at 748. "It also contained language holding the school and the IHSAA harmless of any responsibility and liability for any injury or claim resulting from athletic participation." *Id.*

On appeal, the young man's parents argued that the trial court erred by not proffering their submitted instruction to the jury, which read as follows:

As a matter of law, the Plaintiffs [ ] have not released the Defendant from any alleged negligent acts when the release forms at issue contain language expressly addressing the risks inherent in the sport of football and other vigorous physical activity, but nowhere expressly state the release of [the Defendant] or its agents from their own negligence.

*Id.* at 749. We concluded in *Stowers* that because the release form did not specifically and explicitly refer to the negligence that the defendant was being sued for, it was reversible error for the trial court to

---

4. Specifically, Clay City Schools repeatedly states that the "release language" has been redacted. (See Appellant's Br. pp. 34–35).

refuse to instruct the jury as requested by the Plaintiffs. *Id.*

Here, the redacted release form did not "specifically and explicitly" refer to the negligent acts of the Clay City Schools proven by Mother and Father. *See Stowers*, 855 N.E.2d at 749 (quoting *Powell v. Am. Health Fitness Ctr. Of Fort Wayne, Inc.*, 694 N.E.2d 757, 761 (Ind.Ct.App. 1998)). Therefore, we conclude that the trial court did not abuse its discretion by giving Final Instruction No. 9.

### IV. *Final Instruction No. 16*

 Clay City Schools argues that the trial court abused its discretion by giving the jury Final Instruction No. 16, which stated:

> School officials, such as defendant, are required to exercise reasonable care in the supervision of the students in their care and are required to anticipate and guard against conduct of children by which the child may harm himself or others.

Specifically, Clay City Schools argues that this instruction is an incorrect statement of the law, because under Indiana law, school officials "are not required to anticipate negligence on the part of the child, or unreasonable conduct on the part of the child." (Appellant's Br. p. 37).

In *Miller v. Griesel*, 261 Ind. 604, 308 N.E.2d 701 (Ind.1974), our supreme court addressed a situation where students were left alone in a classroom during recess, with a teacher responsible for periodically looking in on the students. *Id.* at 606, 308 N.E.2d at 703. During recess, one student produced a small tackle box with batteries and a blasting cap inside. *Id.* at 607, 308 N.E.2d at 704. Another student did not recognize what the blasting cap was and decided to connect it to the batteries. *Id.* The blasting cap blew up and injured the student. *Id.*

 Our supreme court summarized the applicable law by stating that "the common law of this State recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under this authority." *Id.* at 612, 308 N.E.2d at 706.

> It should be emphasized here, however, that schools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them. The duty imposed by this legal relationship is a practical recognition by the law that school officials are required to exercise due care in the supervision of their pupils; that while they are neither an insurer of safety nor are they immune from liability. *It is not a harsh burden to require school authorities in some instance to anticipate and guard against conduct of children by which they may harm themselves or others.*

*Id. (emphasis added).*

We note that the trial court's Final Instruction No. 16 closely follows the language of our supreme court in *Miller*. For this reason, we conclude that the trial court's Final Instruction No. 16 is not an incorrect statement of law, and the trial court did not abuse its discretion by giving it.

### V. *Final Instruction No. 24*

Clay City Schools argues that the trial court erred by giving the jury Final Instruction No. 24, which stated:

> If you find that both the decedent and the defendant were negligent, then the plaintiff cannot recover if the decedent's negligence proximately contributed to his injuries. You should not attempt to weigh or compare who was the most negligent. If you find any negligence on the part of Kodi Pipes which proximate-

ly contributed to his injuries, then you may find for the defendant.

(Appellant's App. p. 35). Specifically, Clay City Schools focuses on the final phrase of the jury instruction and contends that since it informs the jury that it *"may* find for the defendant," it is an incorrect statement of law.

▆▆▆▆▆ Clay City Schools correctly points out in its brief that contributory negligence on the part of the plaintiff bars recovery against government actors. *Stowers,* 855 N.E.2d at 739. Mother and Father respond that Final Instruction No. 24 is a correct statement of the law relying on *Booher v. Alhom, Inc.,* 156 Ind. App. 192, 200, 295 N.E.2d 841, 847 (1973). *Booher* considered the propriety of a jury instruction, which instructed the jury that if it found that the plaintiff's negligence proximately contributed to his injuries "then your verdict may be in favor of the defendant." *Id.* However, the propriety of the use of the word "may" in the jury instruction recited in *Booher* was not addressed in that appeal. Because negligence on the part of the plaintiff completely bars recovery against government actors, we agree with Clay City Schools that the trial court should not have instructed the jury that it "may" find for the defendant if the plaintiff was negligent, and this instruction should be corrected if a subsequent trial is held.

VI. *Final Instructions Nos. 19, 21, & 25*

Finally, Clay City Schools argues that the trial court abused its discretion when it instructed the jury on proximate cause in final instructions nineteen, twenty-one, and twenty-five. Final Instruction No. 19 provided:

In determining whether the defendant's negligence was a proximate cause of Kodi Pipes['] death, it is only necessary that you determine by a preponderance of the evidence that the defendant's negligence contributed in causing the death of Kodi Pipes. In other words, defendant's negligence need only be a contributing cause of his death not the sole cause.

(Appellant's App. p. 30). Final Instruction No. 21 provided:

To be liable, the law does not require the defendant to foresee the exact manner in which the harm occurs to the plaintiffs nor the extent of the harm, but only that it was foreseeable that an injury could occur by defendant's act or omission.

(Appellant's App. p. 32). And, Final Instruction No. 25 provided:

As an act or failure to act is a proximate cause of an injury as long as that kind of injury was foresee[n], or reasonably should have been foreseen, as a natural and probable consequence of the act or omission. It is not necessary that the defendant's negligence is the sole cause or even the immediate cause of the injury. If the defendant's act or omission was a factor in producing some injury of which the complaint is made, and the particular injury suffered is of the class of injuries which was reasonably foreseeable to result from such negligence, then the negligent act or omission is a proximate cause of the injury. There can be more than one proximate cause of an injury, and each such actor can be held liable for the resulting damages. If the harm that results is caused by the act or conduct of a person other than the defendant or defendants, that harmful conduct precludes a finding that the defendant was a proximate cause of the harm only if the intervening conduct of the third party was a new, independent, intervening force not reasonably foreseeable at the time of the defendant's wrongful conduct. If the intervening wrongful conduct of the third party was

reasonably foreseeable at the time of the negligent conduct of the defendant or defendants, then the wrongful conduct of the defendant or defendants will still be considered a proximate cause of the harm.

(Appellant's App. p. 36).

Clay City Schools fails to mention that in addition to the trial court's Final Instructions Nos. 19, 21, and 25, the trial court also issued Final Instruction No. 22 to define proximate cause for the jury: "An act or omission is the proximate cause of an injury/death if the injury/death is a natural and probable consequence of the act or omission." (Appellant's App. p. 33). This instruction closely follows the definition of proximate cause supplied by the Indiana Pattern Jury Instructions (Civil), Instruction No. 5.06.

Clay City Schools argues that the trial court's instructions on proximate cause are in error because nowhere is it stated that Clay City Schools' act or omission must be a "substantial factor" as required by Indiana law, not just "a factor" as stated in Final Instruction No. 25.[5] (Appellant's Br. p. 42). Clay City Schools cites to Indiana appellate court opinions which included the phrase "substantial factor" when discussing proximate cause in an attempt to persuade us that the trial court's instruction on this point is reversible error.[6]

However, we previously addressed the specific question of whether a final jury instruction was reversible error for failing to use the phrase "substantial factor" to define proximate cause for the jury in *Hawkins v. Cannon*, 826 N.E.2d 658, 662 (Ind.Ct.App.2005), *trans. denied.* The in-structions on proximate cause at issue in *Hawkins* were as follows:

It is not necessary that the defendant's negligence is the sole cause or even the immediate cause of the injury. If the defendant's act or omission *was a factor* in producing some injury of which the complaint is made, and the particular injury suffered is of the class of injuries which was reasonably foreseeable to result from such negligence, then that negligent act or omission is a proximate cause of the injury.

* * *

"Proximate Cause" is that cause which produces the injury complained of and without which the result would not have occurred. That cause must lead in a natural and continuous sequence to the resulting injury, unbroken by any efficient intervening cause.

*Id.* (emphasis in original). We concluded that the two instructions together sufficiently instructed the jury on the element of proximate cause, despite no mention of the requirement that the act or omission be a "substantial factor" because they introduced "the 'but for' test into the definition of proximate cause." Id. (citing *Gates v. Riley ex rel. Riley*, 723 N.E.2d 946, 950 (Ind.Ct.App.2000), trans. denied).

 In keeping with *Hawkins*, an instruction that the act or omission of a defendant must be found to be a "but for" cause of the plaintiff's injury cures any error of omitting an instruction on the "substantial factor" test. But here, the jury was not instructed on the "but for" test of proximate cause either.

---

5. Clay City Schools states that this purported error is "repeated several times, compounding the error." (Appellant's Br. p. 42). However, we only note once in the final instructions where the phrase "a factor" is used to help define proximate cause.

6. Appellant's Brief p. 42 (citing *Swanson v. Slagal*, 212 Ind. 394, 8 N.E.2d 993 (1937); *Cahoon v. Cummings*, 734 N.E.2d 535, 540 (Ind.2000); *Ray v. Goldsmith*, 400 N.E.2d 176, 179 (Ind.Ct.App.1980); and *Johnson v. Bender*, 174 Ind.App. 638, 369 N.E.2d 936 (1977)).

The Indiana Pattern Jury Instruction (Civil), Instruction No. 5.06 does not define proximate cause by either a "substantial factor" test, or a "but for" test; rather the instruction reads that "an act or omission is a proximate cause of an [injury or death] if the [injury or death] is a natural and probable consequence of the act or omission." The trial court's final instructions twice informed the jury of this requirement of proximate cause. However, it is well established that: "[a]t a minimum, proximate cause requires that the injury would not have occurred but for the defendant's conduct." *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1054 (Ind.2003) (citing *Bader v. Johnson*, 732 N.E.2d 1212, 1218 (Ind.2000)); *see also Doe v. Lafayette School Corp.*, 846 N.E.2d 691, 700 (Ind.Ct.App.2006) (abrogated on other grounds by *State Farm Mut. Auto. Ins. Co. v. Jakupko*, 881 N.E.2d 654 (Ind. 2008)). Since the "but for" test is the minimal requirement to determine proximate cause, we conclude that it would be an abuse of discretion to omit language conveying that requirement in a jury instruction on proximate cause.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court committed reversible error when instructing the jury that Indiana law contains a rebuttable presumption that children between the age of seven and fourteen cannot be contributorily negligent. Therefore we must reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BAILEY, J., and BRADFORD, J., concur.